## THE ILLINOIS STEEL COMPANY

### v.

## ANDREAS SCHYMANOWSKI.

*Filed at Ottawa May 12, 1896—Rehearing denied October 13, 1896.*

1. TRIAL—*when court should not take a case from the jury.* A peremptory instruction to find for defendant is properly refused where there is evidence tending to establish a cause of action.

2. SAME—*personal injury—evidence held sufficient to go to the jury.* Evidence that a foreman struck with his pick a pile of ore, whose fall caused an injury to an employee, and profanely ordered such employee to work at the place, is sufficient to go to the jury on the question whether such conduct was or was not wanton and reckless, as alleged in the declaration.

3. MASTER AND SERVANT—*duty of master to observe and know conditions under which he sets servant to work.* It is the duty of an employer, in ordering a laborer to work near or alongside a pile of ore packed into such a mass that the use of explosives is required to loosen it, to observe carefully the condition of the material as to looseness or compactness and all other features of its structure, so as to be able to determine what shall be done to prevent the fall of ore upon such employee.

4. SAME—*servant may rely upon master's precautions for his safety.* An employee set to work beside a pile of ore from which material is required to be loosened by the use of explosives, is not bound to study the conditions affecting the stability of the ore at the sides of the pile, or do anything except to work as well as he can under the directions given him.

5. SAME—*master liable for negligent commands of one he places in control.* An employee given by a corporation control over a particular class of workmen in any branch of its business is in such respect the direct representative of the company, and the company is responsible for the consequences of the commands given by him.

6. SAME—*when the act of a foreman is the act of the master.* The act of a foreman in picking at a pile of ore beside which he has set a laborer at work, so as to loosen the support of the upper part of it and cause the ore to fall upon such laborer, is the conduct of the master, and not that of a fellow-servant.

7. SAME—*extent of master's duty to furnish servant a safe place to work.* The duty of an employer to use reasonable diligence in seeing that the place where the work of his servant is to be performed is safe for that purpose, extends not only to such risks as are known to him, but to such as he ought to know in the exercise of due dili-

162 447
69a 396
70a 92

162 447
172 182

162 447
75a 33
75a 151
75a 350
75a 367
76a 399
162 447
175 318
175 479
176 274
77a 438
77a 520

162 447
80a 103

162 447
82a 114
82a 512
83a 535

. 162 447
f184 485
185 393
185 575
88a 173
88a 400
88a 644
162 447
92a 8313

162 447
90a 5594

162 447
89a 9116

162 447
d94a 1099
94a 10276
162 447
191 5239
192 1512
96a 2291
96a 4592
97a 4628

162 447
193 10333

162 447
196 7350
196 2385
196 13387
100a 3376
100a 11609
100a 13611

162 447
102a 8353
102a 10354
102a 9355

162 447
200 8109
200 9110
200 9285

162 447
202 8339
202 8341

162　447
203　9503
106a　8 30
107a　7589
109a　12623

162　447
207　2460
207　9581
207　5601
110a　7601
110a　8678

162　447
210　217
211　9227
112a　8238
112a　457

162　447
213　8315
213　9316

gence, and includes keeping the edge of a pile of ore in such condition that the pile will not fall upon those working at its base.

8. SAME—*when servant's knowledge of conditions is not an assumption of risk.* Knowledge by an employee set to work by the side of a pile of ore that the light is insufficient, and his continuance at the work, do not constitute an assumption of the risk of the unsafe condition of the pile.

9. SAME—*some knowledge of attendant danger will not defeat recovery by servant.* The right of a servant to recover for injuries will not be defeated by some knowledge of attendant danger, if, in obeying the order of the master to perform the work, he acts with the degree of diligence which an ordinarily prudent man would exercise under the circumstances.

10. SAME—*servant may assume that master will not expose him to unnecessary peril.* A servant ordered by the master to perform a particular work has the right to assume that he will not be exposed to unnecessary perils, and to rest upon the implied assurance that there is no danger.

11. APPEALS AND ERRORS—*effect of refusal to direct a verdict on a count not proved.* A judgment will not be reversed for refusal to direct a verdict upon one count of a declaration where the remaining counts are sufficient to sustain it.

12. PLEADING—*when allegation in declaration will be treated as surplusage.* The allegation, in a declaration for injuries to an employee, of a promise to furnish additional light may be regarded as surplusage, where the same count also charges negligence in failing to keep the sides of a pile of ore of such shape and so supported that the ore would not fall down and injure employees, and injuries to the employee result from that cause.

13. INSTRUCTIONS—*when improper refusal of instruction is cured.* Refusal of an instruction to find for defendant upon the first count of a declaration because there was no evidence of a promise alleged is not cause for reversal, where an instruction given calls the attention of the jury to the absence of all testimony upon the subject of such a promise.

14. SAME—*instruction assuming unproved facts properly refused.* An instruction assuming that an employee suing his employer for personal injuries from the fall of ore from a pile at the base of which he was working was aware of the dangerous condition of the pile, and that there was a promise to remove the danger, is properly refused, where there is no evidence of such knowledge on his part or of such promise, especially where it ignores the fact that he was ordered to work where he did.

*Illinois Steel Co.* v. *Schymanowski,* 59 Ill. App. 32, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE F. BLANKE, Judge, presiding.

This is an action brought by appellee against the appellant company to recover damages for a personal injury. The trial below resulted in verdict and judgment for the plaintiff, which judgment has been affirmed by the Appellate Court, and the present appeal is prosecuted from such judgment of affirmance.

The declaration consists of three counts. The first count alleges that on January 18, 1892, the defendant was possessed of a large pile of ore, and was in the night time causing quantities of ore to be taken from said pile aforesaid and conveyed elsewhere, and it was the duty of said defendant to have the sides of said pile of ore of such a shape and so supported that said ore would not fall down and injure the persons engaged in its removal, as aforesaid, yet the defendant did not do its duty in this regard, but carelessly and negligently had and kept the side of said pile of ore from which ore was being removed, as aforesaid, so steep, unsupported and overhanging that the under part of the same would not support the upper part of the same, and the plaintiff was in the employ of said defendant, and was then and there by said defendant in the night-time set to work to assist in moving ore at said place in said pile of ore from which ore was being moved, as aforesaid, and was by said defendant ordered to work at said place and assist in moving said ore, and the plaintiff then and there, without fault or negligence on his part, being ignorant of the dangers of the place, obeyed the order of said defendant and went to work at said place assisting in moving ore from said pile, when, in consequence of the careless and negligent misconduct of the defendant aforesaid, a large quantity of ore fell from the upper part of said pile of ore to and upon the

plaintiff there, and without fault or negligence on his part greatly bruised, wounded, mangled him, etc.

The second count is the same as the first, except that, in addition to the duty alleged in the latter count, it sets up the further duty of the defendant to have the place at said pile of ore from which ore was being taken, as aforesaid, well and sufficiently lighted, so that the persons engaged in removing said ore from said pile might safely perform their work and see and avoid any danger which might threaten them in the prosecution of said work; and alleges that defendant had said place from which said ore was being moved, as aforesaid, poorly and insufficiently lighted, so that the persons engaged in removing said ore from said pile of ore could not safely perform their work, nor see nor avoid any danger which might threaten them in the prosecution of their work.

The third count is the same as the second, except that it uses the words, "carelessly, negligently, willfully and wantonly," instead of the words, "carelessly and negligently," and except that, in addition to alleging, that plaintiff "was by said defendant ordered to work at said place and assist in moving said ore," it makes a further allegation in the following words: "And the plaintiff then and there protested to said defendant against working with so little light, but said defendant insisted that the plaintiff should work at said place as it then was, and promised the plaintiff to furnish more light there within a short time thereafter, and the plaintiff then and there, without fault or negligence on his part, relying on said promise of said defendant, the night being dark and stormy and the plaintiff being ignorant of the dangers of the place, obeyed the order of said defendant and went to work at said place, assisting in moving," etc.

The defendant, at the conclusion of the evidence, asked the court to give the following instruction:

"The court instructs the jury that the first count of plaintiff's declaration alleges that defendant furnished

insufficient light for plaintiff to work by; that plaintiff asked for additional light and that defendant promised to furnish the same; that plaintiff, relying on that promise, returned to work; that defendant did not perform its said promise, and that by reason thereof plaintiff was injured. The court instructs the jury that no evidence has been offered to prove that defendant made any such promise as alleged, and that they will, therefore, find for the defendant upon this count."

The court refused to give the instruction as thus asked, but modified it by inserting the words, "that question," after the word, "find," in the last clause of the last sentence, so that said last clause read as follows: "And that they will therefore find that question for the defendant upon this count."

WILLIAMS, HOLT & WHEELER, and E. PARMALEE PRENTICE, for appellant:

The court erred in refusing to instruct the jury to find for defendant on the first count. That count charged malice, and malice not being proven, plaintiff could not recover on that count. *Railroad Co.* v. *Dickson*, 88 Ill. 431; *Railroad Co.* v. *Burkage*, 99 Ind. 46; *Railroad Co.* v. *Winn*, 93 Ala. 306; *Coulton's case*, 86 id. 129; *Railroad Co.* v. *Jacobs*, 92 id. 187.

That count also alleged insufficiency of light; that defendant promised to furnish additional light; that plaintiff, relying on this promise, returned to work and was injured. No promise was proved. The allegations referring to this promise were material, and cannot be considered as surplusage. *Railroad Co.* v. *Morkenstein*, 24 Ill. App. 128; *Railroad Co.* v. *Watson*, 114 Ind. 20; *Railroad Co.* v. *Drew*, 59 Tex. 10.

If these allegations be considered as stricken out from the first count, the rest of the count remaining as originally drawn, the result would be that the count would

state no cause of action against the defendant. *Railroad Co.* v. *Watson*, 114 Ind. 20; *Railroad Co.* v. *Drew*, 59 Tex. 10; Cooley on Torts, 559; *Stevenson* v. *Duncan*, 73 Wis. 404.

The servant is under as great obligation to provide for his own safety from such dangers as are known to him or as are discernible by ordinary care on his part, as the master is to provide it for him. He must not go blindly to his work. *Wormell* v. *Railway Co.* 79 Mass. 405; Bailey on Master's Liability, 159-161.

Personal negligence is the gist of an action of this sort, and it must therefore appear, to render the master liable, that he knew, or from the nature of the case ought to have known, of the unfitness of the means of labor furnished to the servant, and that the servant did not know, or could not reasonably be held to have known, of the defect. Beach on Cont. Negligence, sec. 346; *Griffiths* v. *Docks Co.* 13 Q. B. Div. 259; *Railway Co.* v. *Bailey*, 110 Ind. 75; *Wright* v. *Railroad Co.* 35 N. Y. 562; *Booth* v. *Railroad Co.* 67 id. 593; *Murphy* v. *Railroad Co.* 88 id. 146; *Laning* v. *Railroad Co.* 49 id. 521; *Ryan* v. *Fowler*, 24 id. 410; *Fuller* v. *Jewett*, 80 id. 46; *Vosburgh* v. *Railroad Co.* 94 id. 374; *Cone* v. *Railroad Co.* 81 id. 206; *Flike* v. *Railroad Co.* 53 id. 549; *Corcoran* v. *Holbrook*, 59 id. 519; *Hickey* v. *Taaffe*, 32 Hun, 7; *Hawley* v. *Railroad Co.* 82 N. Y. 370; *Daley* v. *Shaff*, 28 Hun, 314; *Ellis* v. *Railroad Co.* 95 N. Y. 546; *Holden* v. *Railroad Co.* 129 Mass. 268; *Ford* v. *Railroad Co.* 110 id. 240; *Snow* v. *Railroad Co.* 8 Allen, 441; *Hackett* v. *Manufacturing Co.* 101 Mass. 101; *Arkarson* v. *Dennison*, 117 id. 407; *Walsh* v. *Valve Co.* 110 id. 23; *Wheeler* v. *Mason Manf. Co.* 135 id. 294; *McGee* v. *Cordage Co.* 139 id. 145; *Baker* v. *Railroad Co.* 95 Pa. St. 211; *Patterson* v. *Railroad Co.* 76 id. 389; *Johnson* v. *Bruner*, 61 id. 58; *O'Donnell* v. *Railroad Co.* 59 id. 389; *Oil Co.* v. *Gilson*, 63 id. 146; *Riley* v. *Steamship Co.* 29 La. Ann. 791; *Muldowney* v. *Railroad Co.* 39 Iowa, 615; *Greenleaf* v. *Railroad Co.* 29 id. 14; *Tuttle* v. *Railroad Co.* 48 id. 236; *Brann* v. *Railroad Co.* 53 id. 595; *Baldwin* v. *Railroad Co.* 50 id. 680; *Way* v. *Railroad Co.* 40 id. 341; *Hallower* v. *Henley*, 6 Cal. 209;

*McGlynn* v. *Brodie*, 31 id. 376; *Baxter* v. *Roberts*, 44 id. 187; *Sullivan* v. *Bridge Co.* 9 Bush, 81; *Hayden* v. *Manufacturing Co.* 29 Conn: 549; *Quaid* v. *Cornwall*, 13 Cush. 601.

BRANDT & HOFFMANN, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—It is assigned as error, that the court refused to instruct the jury to find for the defendant, as it was requested in writing to do. We have often said, that, where there is evidence tending to establish a cause of action, it is not error to refuse a peremptory instruction to find for the defendant. (*National Syrup Co.* v. *Carlson*, 155 Ill. 210). After a careful examination, we are unable to say, that the evidence as given at the trial, with all the inferences which the jury could justifiably draw therefrom, was so insufficient to support a verdict for the plaintiff, that the court would have been authorized in directing a verdict for the defendant. (*Drop Forge and Foundry Co.* v. *Van Dam*, 149 Ill. 337).

Appellant was engaged in the reduction of iron ore and the manufacture of iron and steel at South Chicago, when the accident occurred which caused the injury to appellee. In the works of appellant at this time was a large pile of iron ore, several hundred feet long and about seventy-five feet high at the highest point. The ore on this pile was shot down with dynamite in the daytime by a gang of men. The ore, thus loosened and detached from the pile and lying on the floor at its bottom, was put into "buggies," or wheeled vehicles, and taken to the furnaces. Appellee was a servant in the employment of the appellant company, and, on the night of January 18, 1892, he was engaged in loading the ore into the "buggies." Upon the night in question, it was snowing hard. About ten o'clock on that night, while appellee was thus at work at a mass of ore which lay upon the floor, a large piece of ore, about eight feet long

and three feet thick, fell from the perpendicular part of the pile of ore, and crushed appellee's foot so as to permanently cripple him.   The pile of ore, at the place where appellee was working, was perpendicular for a distance of from three to ten feet, and commenced to slope back at that distance from the floor.   The ore was packed into such a solid mass, that it required the use of explosives to loosen it. · After it was shot down by dynamite, much of it was in large lumps, which had to be broken up by picks before they could be handled.   Appellee was not a member of the gang, whose special business it was to loosen the ore by dynamite in the day-time.   He had nothing to do with that part of the work.   His business was to put the ore, thus loosened from the pile and precipitated to the floor, into the "buggies," and, when they were too large, to break them with a pick.   The men worked wherever the ore, shot down in the day-time, lay upon the floor; and appellee, who had been engaged in this kind of work for about eighteen days before the accident, was generally at work at a distance of from seven to ten feet from the edge of the pile of ore.

The evidence tends to establish the following circumstances:   This night work was usually done by the light of torches.   On the night in question, which was dark and stormy, appellee seemed to regard the light as insufficient, and went to look for the boss, and, finding him about one hundred steps away, asked him for more light, or for "another light."   The boss or foreman replied : "You God damned son of a bitch, you go to work;" he then walked ahead of appellee to the place where the latter had been at work, and took up the pick and put it into the ore, striking the pile a number of times where it was straight or perpendicular, and, according to one of the witnesses, loosening it.   He then threw down the pick and swore at appellee, and ordered him to work there.   Appellee obeyed the order, and, in a very short time after the foreman left, the piece of ore already

referred to, weighing several tons, fell from the perpendicular side of the pile, and injured appellee as stated. There was some evidence tending to show that the bottom of the pile of ore was loose, and, if this was so, it would be apt to follow, that the lower part of the pile would not support the upper part.

Unquestionably, it was the duty of the appellant company, when, through its foreman, or superintendent, or boss, it ordered appellee to work near or alongside of the pile of ore, to see to it that the pile was safe. Appellee had nothing to do with the construction of the pile, or with the loosening of its material by means of explosives. He knew nothing about its condition. A foreman, in charge of workmen and clothed with the power of superintendence, is bound to take proper precautions for the safety of the men at work under him. Where he puts men at work alongside of such a pile of ore as has been herein described, which must be shattered by dynamite in order to loosen its component parts, it is his duty to observe carefully the condition of its material as to looseness or compactness, and all other features of its structure, so that he may be enabled to determine what should be done to prevent such injuries as those inflicted upon appellee. The jury might well have believed that, if he had exercised proper skill and foresight, the accident would not have happened. Whether or not appellee was in the exercise of ordinary care was a question of fact for the jury. It was no part of his duty to study the conditions affecting the stability of the ore at the sides of the pile, or to do anything except to work as well as he could under the directions of the foreman or boss. (*Hennessey* v. *City of Boston*, 161 Mass. 502).

The fact, that the foreman struck the pile a number of times with a pick, may have had the effect of setting in motion the loose portions of the ore and causing the fall of the piece which produced the injury. Whether this was so or not, was, at any rate, a fair matter of

inference for the jury. The master is liable, where the servant is injured by a temporary peril to which he is exposed by the positive negligent act of the employer without any negligence on the part of the servant. (*Fairbank* v. *Haentzsche*, 73 Ill. 236). "Where the personal negligence of the master has directly caused the injury, there the master's liability to the servant is the same as it would be to one not a servant." (Wharton on Law of Neg. sec. 205).

Where a corporation authorizes one of its employees to have the control over a particular class of workmen in any branch of its business, such employee is, *quoad hoc*, the direct representative of the company. The commands, which he gives within the scope of his authority, are the commands of the company itself, and, if such commands are not unreasonable, those under his charge are bound to obey at the peril of losing their situations. Hence the company will be held responsible for the consequences. (*Chicago and Alton Railroad Co.* v. *May*, 108 Ill. 288; *Fanter* v. *Clark*, 15 Ill. App. 470). Here, if the act of the foreman or boss, in picking at the pile, had the effect of weakening the support of the upper part of it, his conduct must be regarded as the conduct of appellant.

The duty of the master to use reasonable diligence in seeing that the place, where the work of his servant is to be performed, is safe for that purpose, extends not only to such risks as are known to him, but to such as he ought to know in the exercise of due diligence. (*Cook* v. *St. P., M. & M. Ry. Co.* 34 Minn. 45; *Consolidated Coal Co.* v. *Haenni*, 146 Ill. 614). In the case at bar, appellant was bound to keep the edge of the ore pile in such condition, that it would not fall upon those whom the foreman ordered to work at its base.

The rule, that the master must furnish to his servant a reasonably safe place to work in, and must use proper diligence to keep such place in a reasonably safe condition, was recently applied by this court to a case, where

the plaintiff was injured while working for the defendant near a row of barrels, which were not kept in such condition that they would not fall upon the plaintiff while working near the same. (*Libby* v. *Scherman*, 146 Ill. 540).

*Second*—It is claimed that the court below erred in not giving the instruction asked by appellant requiring the jury to find for the defendant upon the first count. That count alleges that the defendant promised to furnish an additional light, and did not perform its promise. There was no evidence of any such promise, and the jury were so told in the instruction as modified and given. Whether the instruction as thus modified and given was proper or not, it gave to the defendant whatever benefit was to be derived from calling the attention of the jury to the absence of all testimony upon the subject of such a promise. As the defendant thus secured substantially the same advantage from the instruction given as it would have gained from the instruction asked, it is difficult to see how it could have been injured by the refusal of the latter instruction.

But it is claimed by appellant, that, after that part of the count relating to the promise in question was withdrawn from the consideration of the jury by the giving of the modified instruction, what remained of the count did not state a legal cause of action. Even if this were so, the second and third counts each disclose a legal cause of action, and both are sufficient to sustain the judgment. The verdict is an entire one, not limited to the first count. This being so, section 57 of the Practice act is applicable, which provides, that "whenever an entire verdict shall be given on several counts, the same shall not be set aside or reversed on the ground of any defective count, if one or more of the counts in the declaration be sufficient to sustain the verdict." (2 Starr & Cur. Stat. p. 1822).

Counsel insist that, by the modified instruction, the jury were permitted to regard the remainder of the first

count, after eliminating therefrom the allegation of a promise, as still being a part of the declaration, and that the promise and reliance thereon were so much a part of the first count as to make a recovery upon what was left of it impossible. In other words, it is insisted that the allegation as to the promise cannot be regarded as surplusage. We are unable to agree with this contention. The plaintiff may aver in his declaration as many grounds of recovery as he sees proper, but it is not necessary to prove all that is alleged. It is sufficient to prove enough of the negligence charged to make out a case. (*New York, Chicago and St. Louis Railroad Co.* v. *Blumenthal*, 160 Ill. 40). Where a servant sued his master for a personal injury while engaged in service, and alleged two grounds of actionable negligence, namely, negligence in failing to remedy a defect in the floor of the shop where the plaintiff was employed, and negligence in failing to perform a promise to place guards over certain knives used in the shaping of materials, we said: "The fact, * * * that plaintiff failed to prove that defendant promised * * * to remedy the defect of the machine in regard to guards over the knives, did not preclude a recovery on the ground of other negligence relied upon and sustained by the evidence." (*Weber Wagon Co.* v. *Kehl*, 139 Ill. 644). So, in the case at bar, the first count charges negligence upon the ground that the defendant did not have and keep the sides of the pile of ore of such shape and so supported, that the ore would not fall down and injure the persons at work near the pile, and also upon the ground that defendant did not perform its promise to furnish more light to work by; but the fact, that plaintiff failed to prove the promise to furnish more light, does not preclude a recovery upon the other ground of negligence in failing to keep the sides of the pile of ore in a safe condition.

It is said, however, that, even if the allegation of the promise be regarded as surplusage, the balance of the

first count, after eliminating that allegation, contains an averment, that the plaintiff protested to defendant against working with so little light, and that this averment shows that plaintiff had knowledge of the danger, and yet with such knowledge continued to work. This view ignores the further averment contained in the count to the effect, that plaintiff was ordered to work at said place and assist in moving the ore. The same averment as to the order of the plaintiff is contained in all the counts. Undoubtedly the general rule is, that an employee who continues in the service of his employer after notice of a defect augmenting the danger of the service, assumes the risk as increased by the defect. But this rule is subject to qualification. In the first place, there is a distinction between knowledge of defects and knowledge of the risks resulting from such defects. The servant is not chargeable with contributory negligence if he knows that defects exist, but does not know, or cannot know by the exercise of ordinary prudence, that risks exist. (*Cook* v. *St. P., M. & M. Ry. Co.* 34 Minn. 45; *Consolidated Coal Co.* v. *Haenni*, 146 Ill. 614). Appellee's knowledge of the fact, that the light was not sufficient for work on a dark and stormy night, did not indicate, that he knew of the unsafe condition of the pile of ore and of the risk in working near it. In the next place, a master is liable to a servant when he *orders* the latter to perform a dangerous work, unless the danger is so imminent that no man of ordinary prudence would incur it. Even if the servant has some knowledge of attendant danger, his right of recovery will not be defeated, if, in obeying the order, he acts with the degree of prudence which an ordinarily prudent man would exercise under the circumstances. When the master orders the servant to perform his work, the latter has a right to assume that the former, with his superior knowledge of the facts, would not expose him to unnecessary perils; the servant has a right to rest upon the assurance that there is no danger,

which is implied by such an order. The master and servant are not altogether upon a footing of equality. The primary duty of the latter is obedience, and he cannot be charged with negligence in obeying an order of the master, unless he acts recklessly in so obeying. Whether he acted thus recklessly in obeying his master's order, or whether he acted as a reasonably prudent person should act, are questions of fact to be determined by the jury. (*Anderson Pressed Brick Co.* v. *Sobkowiak*, 148 Ill. 573; *National Syrup Co.* v. *Carlson*, 155 id. 210; *Keegan* v. *Kavanaugh*, 62 Mo. 230; *Aldridge, Admr.* v. *Midland Blast Furnace Co.* 78 id. 565; *Ferren* v. *Old Colony Railroad Co.* 143 Mass. 197; *City of Lebanon* v. *McCoy*, 40 N. E. Rep. 700; *B. & O. C. R. Co.* v. *Leathers*, 40 id. 1094; *Lee* v. *Woolsey*, 109 Pa. St. 124; *Mulcaines* v. *City of Janesville*, 67 Wis. 24; *Kranz* v. *Railroad Co.* 123 N. Y. 1). These questions of fact are settled in this case by the judgment of the Appellate Court affirming that of the trial court.

It is furthermore asserted, that, by the use of the words "willfully and wantonly," the first count charges malice, and that there is no proof of malice. It was for the jury to say, under all the circumstances, whether the conduct of the foreman in striking the pile of ore with his pick, and profanely ordering appellee to work at the place where the striking took place, was or was not wanton and reckless. (*Lake Shore and Michigan Southern Railway Co.* v. *Bodemer*, 139 Ill. 596). But whether there was any proof of wantonness and recklessness or not, the second and third counts contained no allegation on that subject, and, as has already been stated, they are sufficient to sustain the verdict without the first count.

*Third*—It is assigned as error that the trial court erred in refusing to give the *sixth* instruction asked by appellant. This instruction announces in general terms, that where a servant engaged in ordinary labor not requiring special skill, is injured by reason of a danger of which he was aware, the master is not liable, although the ser-

vant may have notified him of the danger, and the master may have promised to remove it; and, in reference to the present case, it tells the jury, that, if they find from the evidence, that the labor in which appellee was engaged was ordinary labor not requiring special skill, and that plaintiff was as well acquainted with any danger which existed at that time as the defendant, then their verdict must be for the defendant.

It may be, that, where an ordinary laborer uses a tool, such as a ladder, in the performance of his work, knowing that such tool is defective, he cannot recover against his employer, although he may have told the latter of the defect and the employer may have promised to remedy it. (*Marsh* v. *Chickering*, 101 N. Y. 397; *Corcoran* v. *Mil. Gas Light Co.* 81 Wis. 191). The danger in such case is obvious, and the continued use of the tool after knowledge of the defect, and after the lapse of more than a reasonable time since the promise to remedy it was made, indicates recklessness. But the sixth instruction was properly refused, because it has no application to this case. The defect, which caused the injury, was the unsafe condition of the pile of ore at the base of which appellee was working, and not the condition of the tools with which he was working. The instruction assumes, that appellee was aware of the dangerous condition of the pile, when there was no evidence upon which such assumption could be based. It also assumes, that there was a promise to remove the danger, when it is insisted by the appellant itself that there is no proof of such promise. It was appellant's duty to see, that the pile of ore was safe, and appellee had the right to rely upon the belief that appellant had made it safe. Hence, the obligation of appellee to be acquainted with the danger was not the same as that of appellant. The latter was liable if it might have known of the danger by the exercise of due care. The instruction ignores the fact, that appellee was ordered by the foreman to work where he did.

The observations here made apply in great part to the seventh instruction asked by the defendant, in the refusal of which there was no error. The fifth instruction given for the defendant stated the law, upon the main propositions embraced in the refused instructions, as favorably for the defendant, as the circumstances of the case required.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*