# John Colson v. C. F. Craver, A. Steele and M. Austin.

1. HAZARDS—*What Risks the Employe Assumes.*—The employe only assumes the risks ordinarily incident to his employer's business and to the manner of having it performed.

2. MASTER AND SERVANT—*Injuries to Servants While Obeying Orders.* —Where the servant is injured while obeying the orders of his master to perform work in a dangerous manner, the master is liable, unless the danger is so imminent that a man of ordinary prudence would not incur it.

3. SAME—*Evidence of the Employer's Mode of Doing Business.*—Proof of matters with reference to the employer's usual and known manner of performing the business in which the servant is engaged, occurring within a reasonable time before the accident, is competent.

Trespass on the Case, for personal injuries. Trial in the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge, presiding. Verdict and judgment for defendant by direction of the court. Error by plaintiff. Heard in this court at the October term, 1898. Reversed and remanded. Opinion filed January 26, 1899.

JOHN C. TRAINOR, attorney for plaintiff in error.

ARCHIBALD CATTELL, D. F. MATCHETT and DEFREES, BRACE & RITTER, attorneys for defendants in error.

Mr. Presiding Justice Windes delivered the opinion of the court.

The only question argued in this case by plaintiff in error is whether the court should have submitted the evidence to the jury, and we will therefore only consider it.

The contention of appellee Craver, that the bill of exceptions is not properly in the record and can not be considered, was disposed of on motion to strike the bill of exceptions from the files, which was denied April 4, 1898. The plaintiff's second amended declaration, on which the trial was had, the defendants interposing the general issue, consisted of three counts which, in substance, allege that plaintiff was an employe of defendants, who operated certain unsafe and dangerous machinery by steam, in their buggy and wagon factory, at Harvey, Illinois, to wit, a circular saw operated by steam, which was suitable only for cutting or ripping long pieces of lumber, and was not safe for cutting or ripping short pieces of lumber without the aid of a helper; that defendants well know that the operation of said saw in cutting or ripping short pieces of lumber by one man, without the aid of a helper, was extremely dangerous, but this fact was unknown to plaintiff; that defendants negligently required plaintiff to cut and rip short pieces of lumber on said saw, operated as aforesaid, without the aid of a helper, and plaintiff, in endeavoring to execute defendants' orders, while exercising due care on his part, and by reason of defendants' negligence, had his left hand cut off by said saw, etc.

At the close of the plaintiff's evidence, defendants moved the court to instruct the jury to find the defendants not guilty, which was overruled. The motion was renewed at the close of all the evidence, and a written instruction to that effect was given by the court, which is the error complained of.

The evidence shows that plaintiff was forty-seven years of age, a laborer, not a mechanic, but had had about three years' experience in the operation of such saws as defendants'; that he was employed by defendants as a laborer from April

27th to May 22, 1891, in bringing lumber from their lumber yard into the mill or factory of defendants; that on the latter day, at plaintiff's request, he was put to work cutting or ripping lumber upon the saw by which he was injured on May 23, 1891, and during that day he was assisted by a helper in cutting with the saw what the witnesses termed "short stuff," or short lumber.

The saw in question, which was operated by steam power, and the manner of its operation, is thus described by counsel for defendants in error (which we think fairly states the evidence), viz.: it was a "table saw," consisting of a table fifteen feet long through which there was a slit in which revolved a circular saw some eighteen inches in diameter. The saw itself was revolved upon a stationary axle, but the table moved upon little wheels or rollers, being pushed forward or pulled toward the operator as he desired. A strip or strap attached to the table furnished a handle to move it. The saw teeth were an inch and a quarter long. The sticks of lumber to be sawed were placed upon this table. Two pieces of iron or guards kept the lumber in position, and at the back of the table there was a cleat to keep the sticks in line. A pressure lever kept them from going farther than the guard on the side; and fenders on the side upon which the sawing was being done protected the sawyer. By either pushing the table toward the saw or pulling it toward himself, as the case might be, the sawyer brought the lumber into contact with the saw.

The plaintiff testified with reference to the circumstances attending his injury as follows:

"This foreman told me in the morning to go to work. 'What are you waiting for?' He came up to me, and I says, 'I am waiting for my helper;' he says, 'There is only a few pieces left there, you can do that yourself all right.' So I thought he knew something about it, and I went to work on it. I went to work ripping short stuff, twenty-four inches long, to the best of my knowledge. He set me to work on the saw that I got my hand cut off; what is called the table saw in common language; sometimes it is called a circular saw, but we called it always the table saw. This saw had a table, I should judge, from fifteen to eighteen

feet long. The stuff I was ripping was four inches thick—ash wood. I should judge it was hard wood, because it was pretty dry. I was ripping there four-inch ash, twenty-four inches long, and I ripped a piece there an inch and a half out of that, that is, I was cutting off this, a chunk an inch and a half. This chunk was a piece of timber twenty-four inches long and four inches thick, and I was ripping a piece off of that one inch and a half wide. I would pull the whole thing over like that (illustrating). The saw was right about there, and the piece was about three inches wide, I should think. This was about three inches (illustrating). Three inches wide here (indicating). I put my hand over that to hold it steady, and I pulled it over and the piece raised up; I couldn't hold it and it jammed right in; and it took my hand off here. I couldn't say how long I was working on the saw before my hand was taken off that morning, only a few minutes. My hand was taken off when the first piece was taken off; the first piece I was working on in the morning. At the time the foreman set me to work on this saw, ripping this short stuff, he did not apprise me or say anything to me about the danger of working that kind of stuff on that saw. Mr. Carlson, the helper, had been working with me on this short stuff the day before. He worked with me there before. I told the foreman I was waiting for my helper. I wanted my helper because it was hard work to work all alone at it. At the time I was injured no one was assisting or helping me on this saw that I was ripping this stuff with. Mr. Carlson helped me to rip the last piece I ripped on this saw the night before I was injured. I worked on this stuff the day before, I should judge, as late as from three up to six o'clock."

The plaintiff was corroborated by two witnesses as to the manner and circumstances of the injury.

The only evidence offered by the defendants was of one witness, tending to show previous experience of plaintiff with saws, and, on cross-examination, that plaintiff was given the work at the saw at his own request; that it was used for ripping long and short pieces of lumber, and had been operated by witness in ripping short stuff without a helper.

We are of opinion that this evidence presents matters for the consideration of the jury, and that the learned trial judge should not have instructed a verdict of not guilty at the close of all the evidence.

The employé only assumes the risks ordinarily incidental to his employer's business and to the employer's known manner of having it performed.   3 Elliott on Railroads, Secs. 1289 and 1296, and cases cited; Ill. Steel Co. v. Schymanowski, 162 Ill. 447.

That this saw was dangerous to the operator, is apparent from the evidence.   It was ordinarily operated by defendants in the cutting and ripping of short lumber, as the evidence tends to show, by two men, the sawyer and a helper. Plaintiff was *ordered* by defendants' foreman to go to work to cut some short pieces of lumber without a helper, and while plaintiff was sawing the first piece his hand was taken off.   He told the foreman he was waiting for his helper, but on receiving the order he went to work.   He testifies, "So I thought he knew something about it, and I went to work on it.   *   *   *   He did not apprise me or say anything to me about the danger of working that kind of stuff on that saw."

It can not, as matter of law, be said, from this evidence, that the danger was so imminent that an ordinarily prudent man, knowing it, would not have encountered it.   On this matter reasonable and fair-minded men might honestly differ, and the question should have been left to the jury. Dallemand v. Saalfeldt, 175 Ill. 310; Union Show Case Co. v. Blindauer, Id. 325; Offutt v. World's Columbian Exposition, Id. 472.

In the latter case the court say (p. 478):

"The next contention is, that it appears from the testimony given by plaintiff himself, that he knew that it was unsafe to place the double loop through the hook and to use the short stage or scaffold sent up to him, as he was ordered to do by the foreman, and that, having knowledge of the danger likely to result from his compliance with the foreman's demands, he should, acting prudently, have refused to obey, and that failing in this he was guilty of such contributory negligence as precludes recovery on his part. Under the evidence it can not be assumed, as a matter of law, that the danger was so imminent that no man of ordinary prudence, having knowledge of it, would incur it.   The rule is, that where the servant is injured while

obeying the orders of his master to perform work in a dangerous manner, the master is liable, unless the danger is so imminent that a man of ordinary prudence would not incur it.  Under the evidence in this record it would seem clear that it was a question of fact for the jury to determine whether the danger was of the character mentioned, and whether the plaintiff knowingly incurred it. The mere fact that he did not regard it as safe to fasten the hook over the double loop, and that the usual, customary and safer way was to attach the hook to the single loop, with a noose over the beam or rafter, and that he regarded the stage or scaffold as too short, but performed the work as specifically directed by the master, was not, under all of the circumstances of this case, such proof as to authorize the court to say to the jury, as a legal proposition, that the evidence, with all justifiable inferences to be drawn from it, was insufficient to authorize recovery."

Inasmuch as there may be another trial of this case, we call attention to the exclusion by the court of evidence as to the usual and ordinary method of conducting defendants' business.   As we have seen, the employe only assumes the risks ordinarily incidental to his employer's business and to the employer's known manner of having it performed. The court, by several rulings, refused to allow plaintiff to prove anything that occurred with reference to the operation of the saw the day before the accident.   It is true there was some evidence in this regard admitted, but some was excluded which was competent on the question as to whether plaintiff assumed the risk of injury.   If defendants usually and ordinarily had a helper to assist the sawyer in the operation of this saw, that fact was of great importance to plaintiff, as may be seen from an examination of very many of the adjudicated cases on assumed risks.

The judgment will be reversed and the cause remanded.