## Anthony Ittner Brick Co. v. John W. Ashby, Adm'r, etc.

1. INSTRUCTIONS—*When They Should be Given at Close of Plaintiff's Testimony in Chief to Find for Defendant.*—The practice in this State of moving the court to instruct the jury at the close of plaintiff's testimony in chief to find for the defendant is now well settled to be confined to those cases where the plaintiff's evidence utterly fails to establish a cause of action against the defendant, thus presenting to the court a question of law to be determined by it, and which, if determined in favor of the defendant, ends the case; for, when there is no evidence to sustain a verdict against a defendant if one is found, the law is that no such verdict will be allowed to stand.

2. SAME—*When Covered by Other Instructions, Not Error to Refuse.*— One can not complain of an instruction being refused which is covered by other instructions given at his request.

3. TRIAL—*When the Court Should Not Take the Case from Jury.*— Where there is evidence tending to establish the plaintiff's cause of action an instruction to find for the defendant is properly refused.

**Action on the Case.**—Appeal from the Circuit Court of St. Clair County; the Hon. MARTIN W. SCHAEFER, Judge, presiding. Heard in this court at the August term, 1901. Affirmed. Opinion filed March 3, 1902.

Appellant is a corporation and operated a large brick plant at Swansea, near the city of Belleville. A part of its plant was a building or shed, about two hundred feet in length, about fifty feet wide, and fifteen or eighteen feet high, in or under which was stored large quantities of clay to be manufactured into brick. This clay had been taken from the clay-pit by excavators or scrapers, drawn by mules, and deposited in the building or shed, near to the top of it, at one end. In doing this work, the mules and excavators passed over the clay deposited, and trod or so compacted the most of it together as to require a pick, in places, to loosen it, when again removed to be fed to the brick machine. On account of the posts under the shed to hold it up, and the irregularities of the tracks made by the mules and excavators in passing over the clay deposited, the stratas of the clay, as deposited in its original bed, became broken and destroyed, thus weakening the ability

of the clay, after removal from its natural home, to hold itself together.   These facts were known by the officers of the brick company.

The end of this artificial clay bank next to the machinery was nearly perpendicular, and was twelve or fourteen feet in height, while the opposite end was raised little, if any, distance from the ground.   There was a tramway laid from the brick machinery to the perpendicular end of the clay bank, on which a car or box was propelled in carrying the clay to the brick machine.   The method of loading the clay into the car, was to use a pick at the bottom of the bank to undermine the clay about a foot, when it would fall and would be shoveled into the car and thence be carried to its destination.

On April 1st, 1900, the brick company, by its foreman, one Robert Kretzner, employed the deceased to work at its yards at a certain price per day, and the foreman directed him to undermine the clay bank and load the clay after it fell, or became loosened, into the tramway cars, which deceased proceeded to do.   The next day after deceased commenced work, and while he was engaged in shoveling clay into a car, a section of the clay bank fell upon him, breaking his leg and otherwise injuring him, from which injuries he died about the first of August following. Deceased was forty-one years of age and left a wife and three minor children surviving him.   He had been a section hand on a railroad, but had had no experience in moving clay, in the manner it was moved in appellant's yard.

Appellee brought this suit against appellant alleging in his declaration, the exercise of due care on the part of deceased; inexperience in the work he was directed to do; lack of knowledge of danger in doing the work in the manner he was directed by appellant's foreman; knowledge of the danger on the part of appellant, and negligent omission of duty of appellant in not informing deceased of the danger incident to doing the work in the manner directed. There was a trial by jury, and at the close of plaintiff's evidence in chief, appellant made a motion to instruct the

jury to find a verdict for the defendant, which motion was denied, and at the close of all the evidence the motion was renewed and again denied. The jury returned a verdict for the plaintiff for $3,000 damages; a motion by defendant below for a new trial was overruled, and judgment was entered on the verdict, from which an appeal to this court was granted by the trial court.

H. M. POLLARD, attorney for appellant.

CHAS. H. PATTON, DILL & WILDERMAN and WEBB & WEBB, attorneys for appellee.

MR. JUSTICE BIGELOW delivered the opinion of the court.

Appellant's counsel, after stating the case substantially as before given, says: " There is very little dispute as to the facts, substantially only one point being controverted." It is evident the point is, whether deceased was warned at the time he commenced work, or thereafter, by appellant's superintendent, or that he became possessed of the knowledge from his own observation, that the place where he was to do the work and the manner of doing it was dangerous.

At the time deceased went to the brick plant to seek employment, his brother, Grant Askew, went with him for the same purpose, and both were employed at the same time, but not in the same line of labor; Grant Askew was a witness for plaintiff and testified, as appears from the abstract of his testimony, as follows:

" Well, the foreman says, 'You are here for a job?' and we told him we was, and he takes us around under the shed and gave him (deceased) a shovel, and he says, 'Help that colored fellow fill that car;' and my brother says to him, ' Is that safe?' and he says, ' We generally work that dirt that way; that is the way we work it.' He says, 'Why, yes, it is safe. We work that dirt that way; that is the way we work it. We work it from the bottom.' "

The foreman of appellant, Robert Kretzner, who employed the deceased and his brother, gave his version of what was said, as abstracted, as follows:

"I saw him on the second of April, 1900. He came to

the works before seven o'clock for work. His brother Grant was with him. They came together and I gave them work, and I gave James Askew work at the foot of the embankment and Grant I put to hauling brick. I had a conversation with James when I put him to work. I showed him his work and what he had to do, and gave him a shovel and a pick and told him he should be careful and watch out whenever he undermined there; whenever it is ready to fall the bank will give him warning; small pieces will come down from the top, and whenever he noticed that, he should step back; and if there was a fall when he was shoveling the clay he should not think that he is safe, but always to watch; whenever he sees anything or sees some clay coming down he should step back."

Besides what occurred at the time deceased was employed, the foreman testified he had warned deceased on several occasions that he should be careful. .

These two witnesses are the only persons who testified in regard to the matter of notice given to deceased of the dangerous condition he would be, or had been, placed in. '

The practice in this State of moving the court to instruct the jury at the close of plaintiff's evidence in chief, to find for the defendant, is now well settled to be confined to those cases where the' plaintiff's evidence utterly fails to establish a cause of action against the defendant, thus presenting to the court a question of law to be' determined by it, and which, if determined in favor of the defendant, ends the case; for, when there is no evidence to sustain a verdict against a defendant, if one is found, the law is that no such verdict will be allowed to be found. An instruction to a jury to find for the defendant is in effect an instruction telling them there is no legal evidence before them tending to prove a cause of action; therefore they must so find. A verdict for the defendant by a jury, whether directed or not, is equivalent to a finding of no cause of action in the plaintiff. In some States the practice seems to be for the court to enter an order non-suiting the plaintiff for lack of evidence to make a case. Ellis & Morton v. Life Ins. and Trust Co., 40 Ohio State, 628.

The rule in this State, in regard to instructing a jury at

the close of plaintiff's evidence in chief, to find a verdict for the defendant, is the same as the rule laid down by the Am. & Eng. Ency. of Law, for granting an involuntary non-suit against a plaintiff, and that is:

"When no sufficient evidence has been adduced by the plaintiff to justify the jury in finding a verdict in his favor, the court may order a non-suit. But where there is any evidence for the plaintiff it is improper to grant a non-suit, and to the plaintiff's evidence must be given the most favorable construction. It must be remembered that it is for the jury to determine the weight of any competent evidence. Where there is a conflict of evidence the court will adopt the view of the contested facts claimed by the plaintiff." * * * See Vol. 16 Am. & Eng. Ency. of Law, 1st Ed., pp. 741-2, 3 and 4, and numerous cases there cited.

To cite the numerous decisions of the Supreme and Appellate Courts of this State on the question presented by defendant's instruction to find for the defendant can scarcely be necessary, in view of the fact that they are in harmony with the rule above stated. Of course there are slight variations in the language of the different writers of the opinions, but the general trend of all of them will be found to be in the same direction and to the same end.

In considering the evidence as to what the conversation between the foreman of the brick works and deceased was at the time the latter was employed, and how it was understood by each of the parties, it would be wrong to consider them as standing on a common level. Deceased was a common laborer, a stranger to the place and unacquainted with the work he was to do, and with the place where he was to do it, and the inquiry he made of the foreman of the works as to the safety of the place where he was to work, showed a desire to be careful for his own safety, and there is good reason for believing that the jury were of the opinion that the foreman did not answer deceased's inquiry as fully as he might have done, but from what he said he left deceased with the conclusion formed in his mind that the place where the work was to be done, and the manner of doing it, were both safe, when in fact neither was safe. But it is not for us to say that deceased was or was not

fully warned of the danger he was liable to meet. The evidence on that point was conflicting and it was the province of the jury to determine which way it preponderated.

Nor can it be said as a matter of law, from the place where deceased was set to work and the manner in which he was directed to perform the labor, that the danger of being injured was so imminent that a reasonably intelligent, prudent, careful, person would have discovered and avoided it, as is contended by counsel for appellant. It is true that the contention of counsel as to the law in general is correct, but whether the facts are as is contended for, was for the jury to determine, and they have determined them adversely to the views of the counsel, and we can not say that their finding in that respect is unsustained by the evidence.

The court did not err in refusing to instruct the jury to find for the defendant, either at the close of plaintiff's evidence in chief or at the close of the entire evidence. Ill. Steel Co. v. Schymanowski, 162 Ill. 459.

A further contention of appellant is, that the court erroneously sustained objections to evidence offered by the defendant " in thirty or forty instances." We have examined all of the questions and the rulings thereon, and find no substantial error in any of them; for surely it was not error to allow the attending physician of deceased to give his opinion as to what caused his death, nor was it error to allow the physician to state what complaints deceased made to him about his injuries, at a time when the appellant was not present. Neither was it error to refuse to allow the foreman of appellant to testify that " if a man uses ordinary care in undermining a clay bank, such as this was, whether there is any danger " in so doing; for if we should agree with the complaining counsel that " this was the very question being tried," we should still be of the opinion that the question should be left for the jury to determine from the evidence, instead of having it determined by a single witness.

It is contended that the court erred in giving plaintiff's first three instructions, not because they are not the law,

but because they are not applicable to the facts in the case. Without giving the instructions at length, it is, we think, sufficient to say, that in our opinion the instructions are based on facts that appear in the evidence, and the court did not err in giving them.

Appellant's complaint against appellee's fourth instruction is that appellant's counsel does not understand it. The instruction attempts to lay down the rule by which the jury might estimate the damages, in case they found a verdict for the plaintiff. It must be admitted that the instruction is somewhat obscure, but this obscurity could not have injured appellant in the least; on the contrary it may have benefited it in serving to keep the damages assessed by the jury within reasonable bounds.

Appellant's twenty-fourth instruction went to the verge, if not beyond the law, in limiting the rule of damages the jury should be guided by, in case they found a verdict for the plaintiff; and as the instruction was clear and distinct on every point it attempted to cover and embrace, it is reasonably certain the jury followed the rule of law laid down in it, rather than the rule attempted to be laid down in appellee's instruction which counsel for appellant is unable to understand.

It is also urged that the court erred in refusing to give appellant's twelfth instruction, which is as follows:

" If you believe from the evidence that the deceased had been working in digging and shoveling earth and clay from the heap or pile in the shed of the defendant, as mentioned in the declaration, for about two days, and that while so working he had full opportunity to become acquainted with the risks of the situation and of his employment, and the danger of the bank caving or falling, and having accepted this risk and continued in such employment without objection on his part, knowing that said bank might fall or cave in and injure him when undermined, he can not recover, if he was injured by exposure to such risk."

In our opinion the instruction is faulty in assuming that the deceased accepted the risk of the falling of the bank, knowing it might fall and injure him, when the matter was

one of the two principal matters in the case, for the jury to determine from the evidence.

But should it be admitted that the instruction is without fault, appellant has no cause to complain of its refusal, for the reason that other instructions given at the request of appellant covered everything, and more, than is contained in the refused instruction.

We are of the opinion that the rules of law enumerated in Ill. Steel Co. v. Schymanowski, 162 Ill. 447, Alton Paving Brick Co. v. Hudson, 176 Ill. 270, and Graver Tank Works v. O'Donnell, 191 Ill. 236, should govern this case.

We find the record substantially free from error, therefore the judgment must be affirmed.