Samuel A. Pinkley, Appellee, v. Chicago & Eastern Illinois Railroad Company, Appellant.

Master and Servant—*what risk not assumed.* Held, under the evidence, that the plaintiff in this case did not, as a matter of law, assume the risk of injuries which might be suffered by him while engaged in handling timbers which had been treated for preservative purposes with a preparation consisting largely of coal tar and creosote.

Action in case for personal injuries. Appeal from the Circuit Court of Fayette county; the Hon. Samuel L. Dwight, Judge, presiding. Heard in this court at the February term, 1909. Affirmed. Opinion filed November 13, 1909.

Brown & Burnside, for appellant.

B. W. Henry and Albert & Matheny, for appellee.

Mr. Presiding Justice Higbee delivered the opinion of the court.

This is an appeal from a judgment for $600 obtained by appellee against appellant, on account of injuries received by him while engaged in handling timbers used for piling, which had been treated, for preserva-

tive purposes, with a preparation consisting largely of coal tar and creosote.

The declaration charged that appellee was a servant of appellant in the latter's railroad yards at St. Elmo, Illinois; that on August 6, 1907, appellant placed in said yards, a carload of green yellow pine piling, all newly and freshly treated with creosote; that the foreman carelessly, negligently and recklessly directed appellee to take hold of said piling with his hands and cant hooks, to assist in unloading the same; that appellee had never had any experience in handling green timbers freshly treated with creosote, and did not know there was danger of being poisoned and diseased therefrom; that appellant knew or in the exercise of ordinary care should have known there was great danger of injury, poison, sickness, soreness, etc., resulting from handling such piling, so treated with creosote; that while appellee, in the exercise of due care for his own safety, was handling said piling, with his hands and cant hooks, he became poisoned, diseased, etc.

As was shown by the proofs, appellant had a supply yard at St. Elmo, where large quantities of ties, piling, sewer-pipe and other materials used by it, were received and afterwards distributed over its lines. Appellee, a man 52 years of age, was employed by appellant on June 3, 1907, and set to work as one of the crew in said yard. Large quantities of piling, railroad timbers and sewer pipe before being shipped to the yard were treated with a preparation of coal tar and creosote to keep them from decaying. The preparation had some of the properties of carbolic acid. When applied to the skin it would burn, sting and frequently blister, causing the skin to peel off. The eyes of those working with timbers treated with it, are caused to smart and when breathed freely, it acts as an irritant. These properties of the preparation were somewhat known by the crew who had suffered thereby to some extent and it was a matter of frequent remark among them, that "black jack," as it was called by them, was "hot

stuff'' to handle. While appellee was at work in the yards, some ten loads of timber and sewer pipes so treated, were handled, but he assisted with only three or four of them. In doing this work, his hands, arms and face were slightly burned and made to smart, but he did not receive any serious injuries. On August 6 aforesaid, a large carload of green piling freshly treated with creosote, came into the yards. The day was hot and the preparation was dripping from the timbers and the car, and would exude when hooks were stuck in the timbers. It was the nature of the preparation to come to the surface of timbers treated with it more freely in hot weather. The foreman took several men, including appellee, to the car to unload it and bringing a can of vaseline, said "Boys you had better put this on your faces, it is green timber and freshly treated." The men applied the vaseline and proceeded under the directions of the foreman, to unload the timbers. Along in the afternoon, appellee experienced a burning sensation, which as he said "hurt like fire." That night he could not rest and was much worse. The next morning he went back to work and when told there was another carload of piling to unload, refused to take part in the work, saying "I am ruined enough from it," gave up his job and another man was put in his place. Appellee was severely burned about the mouth, lips, nostrils and arms and was under a physician's care for several months. His injuries appear to have resulted in a sort of eczema of a very painful nature, which at the time of the trial seemed to be a permanent affliction. Others engaged in unloading the car on that day were also badly blistered and burned but were not permanently injured.

It is claimed by appellant that the danger incident to the unloading of the creosoted timbers, was one of the ordinary risks of the work which appellee was employed to do; that such danger was open, patent and known to him and that when he undertook the work

assigned him, he assumed the risk of any injury which might be incurred.

In support of this theory counsel for appellant cite a number of cases covering well-known general principles of law in regard to the assumption of risk, such as Clark v. C. B. & Q. R. R. Co., 92 Ill. 43; Chicago & Northwestern R. R. Co. v. Donahue, 75 id. 106; Camp Point v. Ballou, 71 id. 417; Kath v. E. St. L. Sub. Ry. Co., 232 id. 126.

On the other hand appellee relies upon the doctrine laid down in Offutt v. Columbian Exposition, 175 Ill. 472, which states that "The rule is that where the servant is injured while obeying the orders of his master to perform work in a dangerous manner, the master is liable, unless the danger is so imminent that a man of ordinary prudence would not incur it." Citing Ill. Steel Co. v. Schymanowski, 162 Ill. 447; Anderson Pressed Brick Co. v. Sobkowiak, 148 id. 573; West Chicago St. R. R. Co. v. Dwyer, 162 id. 482. See also C. R. I. & P. Ry. Co. v. Rathneau, 225 id. 278.

Appellee also relies upon the doctrine that even though a servant may have knowledge of defects in machinery, appliances or places of working, yet if he is lulled into a sense of security by the words, acts or conduct of his master and thereby continues in the work and is injured by reason of such defects, he may recover unless the danger is well known to him or is so obvious that no prudent man would run the risk. 26 Cyc. of Law & Procedure 1213 and cases cited. Also the doctrine laid down in Union Show Case Co. v. Blindauer, 175 Ill. 325, that mere knowledge of the existence of a defect on the part of an employe, without knowing its dangers, does not amount to an assumption of the risk thereby occasioned.

It was clearly shown that appellee knew the handling of the creosoted timbers might and probably would cause blisters and burns but it is equally clear that he did not know that such work might result in the poisoning of his system and lasting injuries, such as did

occur to him. It may be presumed that had he been fully informed of the danger attending the work, he would as a prudent man, have refused to do it, as is shown by the fact that on the next morning after he had learned how serious the danger was, he refused longer to perform such work and gave up his situation. In other words he knew that some injuries might result to him from performance of the work, but had no knowledge of the real extent of the danger. He was also apparently caused to believe that whatever danger of injury there was, would be obviated or deprived of its serious nature by the supposed preventive furnished by his foreman. On the other hand appellant was dealing with a dangerous agent and that too apparently on a large scale and it was its duty, under the circumstances, to observe care in the use of the preparation employed, commensurate with the danger known, or which by the exercise of ordinary care it could have known to exist.

Whether the real dangers incurred by appellee were so obvious and imminent that no person of ordinary prudence would have performed the work he was ordered by his foreman to do; whether he reasonably held the belief that the work was made safe by the vaseline furnished by the foreman; and whether appellant knew or could have known by the exercise of ordinary care, the extent of the danger to which it subjected appellee, were, under the circumstances of this case, questions of fact for the jury and the evidence was such that we do not feel authorized to disturb their verdict.

Complaint is made by appellant that the court refused four of its instructions, one of which was as follows:

"You are instructed that when a servant undertakes or performs any duty which he knows to be dangerous, he assumes the risk incident to the danger, which necessarily arises from the nature of the employment, and if he is injured, on account of the necessarily dan-

gerous character of the work then he cannot recover damages for such injury.''

While this instruction might be proper in some cases, it would have been misleading and therefore improper here. In this case it was not controverted that appellee knew that the work in which he was engaged was to a certain extent dangerous, but it was denied by him and the circumstances tend to show that he had no knowledge of the extent of the danger, or that the injuries which might be inflicted, would be more than temporary. Further the instruction takes no account of the fact that the appellee was working under the direct management of his foreman who was providing a supposed preventive of the danger and in fact wholly ignores the theory which appellee properly relied upon to sustain his right of action. What is said of this instruction, will apply in effect to appellant's other refused instructions.

Appellant also complains of the modification of its sixth instruction. This modification was really incomplete and did not contain all that it properly should have, but another instruction of the series was full and complete upon the subject of the amendment and the series of instructions as a whole fully presented the correct theory in that regard, so that the jury could not have been misled.

We are of opinion from the whole record that substantial justice has been done in this cause, and that there are no errors in the trial of sufficient moment to warrant a reversal.

The judgment of the court below will therefore be affirmed.

                                        *Affirmed.*