THE ILLINOIS STEEL COMPANY
*v.*
JOHN McFADDEN, Admr.

*Opinion filed April 16, 1902.*

1. MASTER AND SERVANT—*servant has right to assume that master will not expose him to unreasonable risk.* The master must exercise care and prudence that those in his employ be not exposed to unreasonable dangers, and the servant has a right to assume that the master will exercise that diligence to protect him from injury.

2. SAME—*right of a servant to obey master's commands.* A servant ordered by the master to do a dangerous act is not required to balance the degree of danger with absolute certainty, and the fact

that he had knowledge of the danger will not defeat recovery for injury, if, in obeying his master's command, he acted with the degree of prudence which an ordinarily prudent man would have used under the same circumstances.

3. SAME—*degree of care to be used does not rest wholly in the master's judgment.* An instruction in a personal injury case is erroneous which relieves the defendant from liability in case the defendant's superintendent exercised such care as in his judgment it was necessary to use at such time.

4. TRIAL—*what evidence sufficient to warrant submission of case to the jury.* Evidence that plaintiff's intestate was employed to remove a "bosh-plate" from the wall of a furnace; that it was customary to turn off the blast before the plate was removed; that defendant's superintendent ordered the plate removed before the blast was turned off, which resulted in the plate being blown out and plaintiff's intestate being killed by fire and molten metal, is sufficient to justify the submission of the case to the jury.

*Illinois Steel Co.* v. *McFadden,* 98 Ill. App. 296, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

The Appellate Court makes the following statement of facts in this case:

"This was an action on the case, brought by appellee against the Illinois Steel Company, charging the latter with negligently causing the death of appellee's intestate, Harry Walsh, on May 22, 1899. The first count of the declaration charged that the defendant ordered said Harry Walsh to go upon a certain platform at a blast furnace in one of its buildings, and loosen a certain bronze plate or casting, commonly callen a 'bosh plate,' set in the wall of said furnace; that the said Walsh and other agents and servants of appellant, in obedience to said order, went upon the said platform, and were engaged in loosening said plate at a time when there was a blast in said furnace, which caused a great amount of pressure upon the walls of the furnace and upon the bosh plate; that it was the duty of the defendant to remove the pres-

sure from said furnace, caused by said blast, so that said bosh plate would not, by said pressure, be forced out of the wall of the furnace; that appellant carelessly and negligently failed and neglected to cause the pressure on said furnace and bosh plate, caused by said blast, to be removed; that said blast forced said bosh plate from the wall of the furnace and permitted the flame and fire to escape, inflicting injuries upon said Walsh, from which he afterwards died. The second count was the same as the first, except that the injuries are alleged to have been caused by the negligence of Patrick Conlon, an employe of appellant, who was superintendent of the blast furnace. The general issue was pleaded and there was a verdict and judgment in favor of appellee for $5000. * * *

"Walsh was employed in the steel mills of appellant at Joliet, as a pipe-fitter and worked under the direction of Conlon, an assistant superintendent of appellant, who had charge of all the men about the furnace room, where deceased was employed. It was one of the duties of deceased to assist in removing bosh plates from the furnace, when necessary. A bosh plate is a hollow metal casting, inserted in the walls of a blast furnace, constructed so that a stream of water may be kept running through it, designed to keep the wall of the furnace cool. When a plate becomes injured so that it leaks, it must be removed and a new plate inserted. The plate in question was about twenty-two inches wide, twenty-eight inches long, and about two and one-half inches thick on the side that was exposed to the heat of the furnace, and about five inches thick on the outside. Such a plate weighs from 280 to 307 pounds. When it is necessary to remove a bosh plate, a bar of iron, which in this case was about thirteen feet long, is inserted into an ear on the plate made for the purpose. At the end of the bar farthest from the furnace a pin is inserted, projecting through the bar. A heavy ball, which slides upon the bar, is thrown forcibly against the pin, and the bosh plate

thus loosened. It was the custom to first loosen the bosh plate, so that it could be taken out quickly, but to defer the final removal until a time when the casting of metal was being run out of the furnace. These castings were taken off about every three hours. When the casting is being taken off, the blast upon the furnace is gradually lowered under the direction of the superintendent, or his assistant, until its entire removal, at which time the outlet, from which the melted iron flows, is stopped with a large lump of clay and the blast immediately turned on again with full force. It was the custom to remove the defective bosh plate, and insert the new one, while the blast was off."

An appeal was taken from the judgment of the circuit court to the Appellate Court. The judgment of the circuit court has been affirmed, and the present appeal is from such judgment of affirmance.

GARNSEY & KNOX, (WILLIAM DUFF HAYNIE, of counsel,) for appellant.

J. W. DOWNEY, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—At the close of the plaintiff's evidence, the appellant moved to exclude all his evidence from the jury. This was denied; and a written instruction to find for the defendant was tendered and refused, and due exception was taken. At the close of all the proof, defendant tendered an instruction in writing instructing the jury to find for the defendant. The court refused it, and defendant took an exception.

"The law is well settled that where there is evidence tending to establish a cause of action, it is not error to refuse a peremptory instruction to find for the defendant." (*Graver Tank Works* v. *O'Donnell*, 191 Ill. 236). The evidence

tends to show, that it was the invariable custom to remove the defective bosh plate when the blast was entirely taken from the furnace. This seems to have been necessary as a measure of safety, inasmuch as it would not be possible to remove an old bosh plate, and replace it with a new one, while the furnace was in operation. The evidence also tends to show that, when a bosh plate became defective or burned out so that it required re-placing, the old bosh plate was first loosened in the wall of the furnace by the operation of a draw-bar made for that purpose, and, after it had been sufficiently loosened, the men always waited until the casting was drawn off and the blast was removed from the furnace, and then the old plate would be removed, and the new one would be put in place while the blast was off.

The negligence charged is, that the appellant ordered the deceased and other servants to work at the plate while the blast was on. In other words, it is claimed by the appellee that Conlon, the superintendent of the appellant, ordered Walsh, and the men with him, to remove the bosh plate without directing the blast to be entirely stopped, and that, consequently, the plate was expelled by the force of the blast, and the expulsion, being attended by an escape of fire and flame, caused the injury to Walsh which resulted in his death.

The evidence tends to show that Conlon, the superintendent, took charge of the work in hand on the day when the accident occurred, and gave all the orders with reference to the manner in which the work should be done. When the plate was first loosened, he ordered all the men to come down from the platform and wait until the casting was done. The evidence tends, furthermore, to show that, before the casting was completed, the superintendent ordered Walsh, and the other men, to go back upon the platform, and to strike the first and second blows on the draw-bar before the casting was completed. The deceased had a right to expect, while he

was obeying the order of his superior, that he would not unnecessarily expose him to danger. (*Offutt* v. *Columbian Exposition*, 175 Ill. 472). It would appear, that Conlon ordered these men to proceed with the work at a time when he must have known that the casting was not drawn, or the blast removed from the furnace. As he was superintendent or vice-principal, his determination to do the work in a dangerous manner was the determination of the master, and the master in such case is liable for the negligent acts of the vice-principal. (*Metropolitan Elevated Railroad Co.* v. *Skola*, 183 Ill. 454). A servant, ordered by one in authority to do a dangerous act, is not required to balance the degree of danger and decide with absolute certainty whether he may safely do the act, and, even if he had knowledge of such danger, it would not defeat a recovery for injury, if, in obeying his master's command, he acted with that degree of prudence, which an ordinarily prudent man would have used under the same circumstances. (*Chicago Edison Co.* v. *Moren*, 185 Ill. 571; *Swift & Co.* v. *O'Neill*, 187 id. 337; *City of LaSalle* v. *Kostka*, 190 id. 130; *Graver Tank Works* v. *O'Donnell, supra*).

There being evidence tending to establish the fact, that the appellee was in the exercise of ordinary care for his own safety, and that the appellant was negligent in ordering him to work at the plate while the blast was on, it was not error for the court to refuse to take the case from the jury.

*Second*—It is urged on the part of the appellant, that the trial court erred in refusing to give the fifteenth and eighteenth instructions asked by the appellant. Instruction numbered 15, so refused, is as follows:

"If the jury shall believe from the evidence that Walsh was apprised or notified by the blowing out of the nipple on the side of the bosh plate that he and his helper, Rogena, were at work at, that it would or might be dangerous to proceed with the work, it was his duty to notify the men, who had charge of the weight on the bar,

to stop striking, and, if he failed to do so, but allowed them to continue the work, then said Walsh failed to exercise that degree of care for his own safety which the law required, and you will find for the defendant."

This instruction was properly refused for the reason that it assumes that the nipple upon the bosh plate, with which the water pipes were connected, blew out. So far as we have been able to ascertain, there is no evidence in the record that while the work upon the plate was in operation a nipple blew out from the bosh plate. The instruction puts upon Walsh the duty of notifying the men to stop striking on the bar, when the proof tends to show that Conlon, the superintendent, was there present ordering the blows to be struck. The position of Walsh was one of obedience, and not of command and supervision. It was his duty to obey, and he did obey the orders given to him by the superintendent. The servant does not assume the risk of the master's own negligence. The master is bound to exercise care and prudence that those in his employment be not exposed to unreasonable risks or dangers; and a servant has a right to understand that the master will exercise that diligence in protecting him from injury. (*City of LaSalle* v. *Kostka, supra; Illinois Steel Co.* v. *Schymanowski,* 162 Ill. 447). But, at least three instructions, to-wit, instructions numbered 11, 14 and 16, were given for the appellant at its request, which cured the error in the refusal of instruction numbered 15, if there was any error in such refusal. Without deciding whether or not instructions numbered 11, 14 and 16, as given for the appellant, laid down the law correctly, it is sufficient to say that, by their terms, the jury were told that, if Walsh was apprised of danger by the blowing out of the nipple, or the escaping of gas, it was his duty to cease work on the building.

Instruction numbered 18, asked by the appellant and refused, is as follows:

"You are instructed that the steel company, defendant herein, is not to be held liable for any case of accident, nor is it to be held liable to any person who may be injured, or to his widow or next of kin in case of death, except in case be proven by a preponderance of the evidence, that some act or acts of negligence on the part of the steel company or its officers or agents, and you are further instructed that, if, from the evidence, you shall believe Patrick Conlon was the assistant superintendent of the Illinois Steel Company, and, as such assistant superintendent, was in charge of, and superintending the removal of, this bosh plate, which caused the injury, and if from the evidence you further believe that the said Conlon was exercising all of the care which, in his judgment, as such superintendent, was necessary to be exercised at that time, and that, notwithstanding such exercise of care by him, said Conlon, the plate was forced out whereby the decedent, Harry Walsh, lost his life, you will find for the defendant."

This instruction is defective because the second part of the first clause thereof is meaningless, inasmuch as the words, "some act or acts of negligence on the part of the steel company or its officers or agents," have no verb which they qualify. In other words, there is a nominative case without any verb following it. But the instruction is defective for the further reason that it assumes that Conlon, the superintendent, was only to exercise such care, as, in his judgment as superintendent, it was necessary to exercise at that time. Inasmuch as the custom and practice had always been to draw the casting and take off the blast before the plate was removed, it was the duty of the superintendent not to order the deceased and the other servants to work at the plate while the blast was on; and it was not sufficient to say that he had a right to exercise his own judgment in determining whether it was safe for the men to work at the plate while the blast was on. If the statement of the super-

intendent himself, that he exercised all the care which in his judgment was necessary, is sufficient, then a convenient defense could always be made in all cases of negligence, where it could not be proven that the vice-principal, or foreman, was incompetent or habitually careless.

The first part of the instruction states that the appellant was not to be held liable "for any case of accident." The rule is, that the servant has a right to understand that the master will exercise such care and prudence, as is necessary to prevent the servant from being exposed to unreasonable risks or dangers; and "it is only such injuries, as have arisen after the exercise of that diligence and care on the part of the master, that can properly be termed accidents or casualties which the servant has impliedly agreed to risk, and for which the master is not liable." The vice of the instruction is, that it relieves appellant from liability in the case of accident without the qualification, that there has been the previous exercise of such care and diligence on the part of the master as is above specified. The servant does not agree to take the risk of every accident or casualty without reference to the previous exercise of diligence and care on the part of the master to avoid such accident or casualty. (*City of LaSalle* v. *Kostka, supra; Noyes* v. *Smith & Lee,* 28 Vt. 64).

Some eighteen instructions were given in behalf of the appellant, presenting the case to the jury in almost every possible phase suggested by the evidence; and the appellant has no reason to complain that the jury was not fully and properly instructed upon all the propositions of law involved in the case.

For the reasons above stated, the judgment of the Appellate Court is affirmed.    *Judgment affirmed.*