THE ILLINOIS STEEL COMPANY

*v.*

ANTON RYSKA.

*Opinion filed December 16, 1902.*

1. APPEALS AND ERRORS—*what questions not reviewable in Supreme Court.* Whether the evidence failed to prove defendant was negligent or showed that plaintiff assumed the risk of injury and was guilty of contributory negligence, in an action for personal injury, are questions not reviewable in the Supreme Court if the evidence tended to prove the declaration.

2. MASTER AND SERVANT—*what questions are for the jury in action by a servant for injuries.* It is a question for the jury whether the foreman exercised reasonable care to see that the place where he ordered a servant to work was reasonably safe before he put him to work, and also whether the servant knew, or should have known, the danger to which he was exposed.

3. SAME—*when servant is not bound to disobey on pain of assuming the risk.* Even if a servant has some knowledge of the dangers attendant upon the work he is ordered to do, he is not bound to disobey orders on pain of assuming the risk, but may perform the service and hold the master liable, unless the danger is such that an ordinarily prudent man would not incur it.

4. SAME—*what may be considered by jury on question of risk.* In determining whether the danger assumed by the plaintiff was such that an ordinarily prudent man would not incur it, the jury may consider the conduct of men employed with plaintiff at the time.

5. EVIDENCE—*servant may testify as to wages he was receiving.* In an action by a servant for personal injuries he may testify as to the wages he was receiving at the time of the injury, even though there is no allegation of special damages in the declaration.

*Illinois Steel Co.* v. *Ryska,* 102 Ill. App. 347, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JONAS HUTCHINSON, Judge, presiding.

Anton Ryska, the appellee, brought this action on the case in the superior court of Cook county against the Illinois Steel Company, the appellant, to recover for a personal injury suffered by him while in its employ. The steel company had upon its premises several blast furnaces for the reduction of iron ore. They were cylindrical in form and about eighty feet high. The coke, lime and ore used in these furnaces were dumped into the top. To raise this material to the top there was an elevator about twenty or thirty feet from the furnace. The material was brought in barrows (or "buggies," as the workmen call them,) to the foot of the elevator, hoisted to the top and then wheeled over a platform to the top of the furnace. This platform extends around the top of the furnace and is roofed and enclosed on the sides. There is an opening in the roof over the top of the furnace to let out the gas that may escape. At one end of this platform and about one foot from the elevator there is a small shanty, in which there was a stove, and a bench and some blocks of wood on which the men sat when not working. In the top of the furnace there was a hopper, in the shape of an inverted cone with the apex cut off, thus leaving an opening into the furnace. Below this opening there was another cone with the apex up, called a "bell." This bell could be raised until it closed up the opening in the hopper. The material used in the furnace was dumped in the hopper and on this bell. Every five

minutes the bell was lowered and the charge allowed to slide into the furnace. Large quantities of gas were produced by the combustion in the furnace, which passed out through a flue at the side of the furnace, but some of the gas frequently escaped through the imperfect joint made by the hopper and bell, and also when the bell was lowered to receive the charge. On the sides of the enclosure around the platform on the top of the furnace holes were cut, large enough for a man to put his head through. Three men were usually employed at the top to charge the furnace. If a man was not able to continue work on account of the gas he would retire to the shanty temporarily, and if unable to resume his work would go down to the ground to recuperate. The men usually at work at the top were used to the gaseous atmosphere, and could withstand the effects of the gas much better than those unaccustomed to it. When a workman had to quit work on account of being overcome by the gas the foreman would send up some one else from his work in the yard, to take his place. On the morning in question the gas was unusually strong at the top of furnace No. 8, where appellee was put to work. The foreman was obliged to put five extra men on there that forenoon. Appellee was engaged on the ground hauling iron at another furnace, and had not been at work on the top of the furnace except on two nights previously, when he was sent there to do some sweeping. It does not appear, however, that gas was escaping from the furnace on either of those occasions. About ten o'clock on the morning in question the foreman ordered appellee to go to the top of furnace No. 8 and help haul the buggies of ore and coke to the furnace. Appellee went up, and the foreman followed in about five minutes. He found appellee with his head out of one of the holes in the enclosure around the platform, trying to get fresh air. He thereupon ordered him to take the place of a man who had been overcome by the gas, and then went

away. About an hour or so afterwards appellee was so overcome by the gas that he went into the shanty and sat down on a block of wood, where he became unconscious and fell over against a hot stove, with his head in the open stove door and resting on the fire. He was severely burned and permanently injured. There was no one else in the shanty at the time. Two others had been overcome with the gas while appellee was working there that morning and had to go down on the elevator to recover.

One of appellee's witnesses testified that the furnace was in a defective condition; that the hopper was full of holes and bent and warped; that the bell did not fit the hopper, and that on account of these defects the gas escaped more freely and in greater volume and intensity than it otherwise would. One of the counts of the declaration was based upon this defective condition of the furnace.

At the close of appellee's evidence, and again at the close of all the evidence, appellant moved to exclude the evidence and to instruct the jury to find for defendant, which motion was overruled. Other motions to the same effect were made and also overruled.

Appellee recovered a verdict for $7500, but a *remittitur* was entered for $2500 and the court entered judgment on the verdict for that amount. On appeal by the steel company the judgment was affirmed by the Appellate Court.

KEMPER K. KNAPP, for appellant.

FRANCIS T. MURPHY, and THADDEUS ALLEE, (EDWARD C. HIGGINS, or counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellant insists that the evidence failed to prove any negligence on its part; that the evidence proved conclusively that appellee assumed the risk of injury from the gas, and that he was guilty of contributory

negligence. These are all questions of fact and are not reviewable in this court, if there was evidence tending to prove the allegations of the declaration. In support of its contention appellant says that it is apparent from the evidence that the presence of gas on the top of blast furnaces is a necessary and inevitable incident of the business, and that all men who have worked about blast furnaces know this fact, and that when men work so as to breathe it, it will affect them; that they knew there was likely to be gas surrounding them in their work in such a way as to affect them at any time, and that it happened frequently, and that therefore appellant was not negligent in ordering appellee to the top of the furnace to work there. The evidence of some of the witnesses was that the gas did not always escape in sufficient quantities to affect injuriously the men employed there. Sometimes it would not be strong for a month at a time, and again it might occur twice a week. The evidence of appellant's foreman was that there was more gas than usual the morning appellee was injured, and that he had to put on five extra men that morning because so many of the men were overcome by the gas and had to be taken down on the elevator. He ordered appellee to go up, and when he saw him trying to get some fresh air he ordered him to go to work. Nothing was said to him by the foreman about the unusual condition of the gas that morning and the consequent dangerous character of the work he was ordered to do. One of appellee's witnesses testified as to the defective condition of the hopper. It certainly cannot be said that there was no evidence tending to prove the plaintiff's case.

Appellant further insists that appellee assumed the risk, because the presence of gas at the top of the furnace was one of the usual and ordinary incidents of the operation of blast furnaces, and because he voluntarily worked in the gas for a considerable length of time before his injury, knowing that the gas was so bad at that

time as to affect the men working there, and was there-
fore guilty of contributory negligence.  The amount of
gas present on the morning in question was character-
ized by the witnesses as unusual, and this extraordinary
condition was not known to appellee or explained to him,
as it ought to have been, when he was taken from a safe
employment and peremptorily thrust into this highly
hazardous employment.  It was a question for the jury
to determine whether the foreman exercised reason-
able and ordinary care to see that the place where he
ordered appellee to work was reasonably safe before he
put him to work there, and also whether appellee knew,
or should have known, the danger to which he was ex-
posed.  Even if he had some knowledge of the dangers
attendant upon the work he was ordered to do, he was
not bound to disobey on pain of assuming the risk, but
might perform the service and hold his employer liable,
unless the danger was such that an ordinarily prudent
man would not encounter it; and in considering this.
question the conduct of the men employed with him at
the same time was proper to be taken into account by
the jury.  *Illinois Steel Co.* v. *Schymanowski*, 162 Ill. 447,
*Chicago Anderson Pressed Brick Co.* v. *Sobkowiak*, 148 id. 573,
*Offutt* v. *World's Columbian Exposition*, 175 id. 472, and nu-
merous other cases.

.The motions to instruct for appellant were properly
overruled.  Whether the appellant was negligent, and
whether appellee assumed the risk of injury from the
gas and was guilty of contributory negligence in obey-
ing orders and continuing to work, were all questions
of fact for the jury, and have been conclusively settled
against appellant.

It is insisted by appellant that it was error to permit
appellee to testify as to the wages he was receiving at
the time of the injury, without an allegation of special
damages in the declaration.  The testimony was proper
under the rule laid down in *Chicago and Erie Railroad Co.*

v. *Meech*, 163 Ill. 305, and *North Chicago Street Railroad Co.*
v. *Brown*, 178 id. 187.

Appellant complains that the court refused to permit
proper cross-examination of appellee's witnesses, and
refused to permit proper questions addressed to appel-
lant's witnesses to be answered. It appears from an
examination of the record that the trial judge was un-
necessarily strict in his rulings on the propriety of cer-
tain questions asked by appellant, chiefly on the subject
whether there was gas at the top of the furnace all the
time, and whether there were any holes in the hopper,
as charged in the declaration and as one of appellee's
witnesses had testified. It was certainly proper for
appellant to establish its view of these controverted
questions, if it could. Some of the questions asked were
undoubtedly proper, and the witnesses should have been
permitted to answer them. But the appellant was not
harmed by the rulings complained of, inasmuch as the
desired evidence was finally obtained,—as in the case of
the witness August Miller, from whom the plaintiff him-
self, on cross-examination, drew out the admission that
the witness did not think there were any holes in the
hopper,—that there were no holes burned out; and in the
case of the witness August Gease the defendant finally
secured the answer, "No, I didn't see any holes in that
hopper,"—which answer the court permitted to stand.
The last witness also testified quite fully as to the pres-
ence of gas at the top of the furnaces.

Appellant complains especially that it was not per-
mitted to show, on the cross-examination of appellee,
that appellee was acquainted with the custom that when
a man was overcome with gas some other man was sent
up to take his place. It would have made no difference
whether appellee knew of the custom or not, for he was
taken from a safe employment and put by the foreman
at a hazardous one, and at a time when the danger was
unusually great. Besides, appellee was not obliged to

disobey the order of appellant's foreman unless the danger was so imminent that an ordinarily prudent man would not expose himself to it.

The court modified the following instructions for appellant by inserting the words printed in italics, which modifications are assigned as error:

"The jury are instructed that if they believe, from the evidence in this case, that at the time the plaintiff was directed to wheel buggies at the top of the furnace there was gas there in such quantities that it was likely to overcome the plaintiff or make him unconscious, and that the plaintiff knew this fact (if it was a fact) for such a length of time before he became overcome or unconscious that he had a reasonable opportunity, under the circumstances of the case, to leave the top of said furnace, then the jury should find the defendant not guilty, *provided you believe, from the evidence, that the plaintiff knew and appreciated the danger of working in the place in question.*

"The jury are instructed that if they believe, from the evidence in this case, that the presence of gas upon the top of blast furnaces is an ordinary incident of the conduct of blast furnaces as ordinarily conducted at the time of the plaintiff's injury, and that sometimes such gas is in quantities sufficient to overpower persons or render unconscious persons there engaged and sometimes such gas is in less quantities, dependent upon matters not within the control of the operators of such furnaces, and that the defendant in this case did not, either expressly or impliedly, inform the plaintiff, while the plaintiff was set to work on top of the furnace, that there was less danger to him from that cause than there actually was, and that the plaintiff knew there was gas there when he went to work on top of the furnace *and appreciated the danger of working there,* then the plaintiff assumed the risk of such gas and cannot recover in this case."

It is contended that the phrase "to know and appreciate the danger" is a stronger statement of the case than

the law demands. The word "appreciate" is defined by the lexicographers to mean, "to be fully aware of or alive to the value, importance or worth of; see the full import of;" (Standard Dict.) "to be fully conscious of; be aware of; detect; perceive the nature or effect of." (Century Dict.) There is a distinction between knowledge of defects and knowledge of the risks resulting from such defects, as this court has repeatedly held. These instructions, however, in stating the law applicable to the case, lacked one essential element to which appellee—not appellant—was entitled. The rule is, that where a servant is injured while obeying the orders of his master to perform work in a dangerous manner or in a dangerous place, the servant is not held to have assumed the risk and the master is liable, unless the danger is so imminent that a man of ordinary prudence would not incur it. (See authorities quoted *supra.*) This element was ignored in these instructions, and without it they were more favorable to appellant than it was entitled to have them, even as modified by the court. The error, if there was any, could not have harmed appellant.

Appellant objects to a modification of another instruction made by the court, which amounted merely to a repetition of a statement of law already in the instruction. While the modification was unnecessary it was not error.

Appellant complains of the giving of the usual instruction as to what the jury shall consider in passing upon the weight and preponderance of the evidence. This instruction was approved in *Meyer* v. *Mead,* 83 Ill. 19, and no error was committed in giving it.

Finding no error in the record the judgment will be affirmed.                    *Judgment affirmed.*