## Chicago & Alton Railway Co. v. Thomas Bell.

1. DEMURRER—*when error in overruling, is waived.* An error in overruling a demurrer to a declaration is waived by having pleaded to the merits, unless the declaration is so defective that it will not sustain the judgment.

2. ASSUMED RISK—*what is not an.* Notwithstanding it is dangerous to undertake to work in a pit under a railroad track, yet it does not necessarily follow that one who goes therein, who is inexperienced and unaware of the dangers of his employment, in obedience to his master's command, thereby assumes the risk.

3. ASSUMED RISKS—*what are.* A servant assumes only such incident risks as are usual and ordinary and which remain so incident after he has used reasonable care to remove them, or if the risks are extraordinary, he assumes only such as were obvious and exposed him to danger so imminent that an ordinarily prudent person would not have remained in the employment.

4. ASSUMED RISKS—*how determined.* Whether particular perils are obvious and whether the risk thereof has been assumed by the servant, are questions of fact for the determination of the jury, and these questions become only ones of law when the evidence is such that but one conclusion could be reached by all reasonable minds.

5. OBEDIENCE—*how far, protects servant suing his master for personal injuries.* Even if a servant had some knowledge of the dangers attendant upon the work which he was ordered to perform, he was not bound to disobey on pain of assuming the risk, but may perform the service and hold his employer liable, unless the danger or risk was such that an ordinarily prudent person would not encounter it.

6. SAFE PLACE TO WORK—*when master liable for failure to furnish a.* When a servant whose employment required him to work in a pit under a railroad track seeks to recover for personal injuries occasioned by being struck by a train on said track, which approached without notice or warning to him, he must allege and prove a want of knowledge on his part of the facts which rendered the place dangerous.

7. SERVANT—*right to presume caution upon the part of his master.* A servant has the right to presume that all proper attention will be given to his safety by his master, and that he will not be needlessly exposed to risks not necessarily resulting from his occupation, and which might be obviated by proper caution on the part of his master.

8. RULES—*master's duty to adopt.* Where rules are required for the safety of his servant, it is negligence for a master to fail to adopt them.

9. CONTRIBUTORY NEGLIGENCE—*how determined.* The question whether a plaintiff was guilty of contributory negligence, is one of fact for the jury.

10. FELLOW-SERVANTS—*when the doctrine of, is not a defense.* The doctrine of fellow-servants does not apply, and is not a defense to an action for personal injuries arising from the neglect by the master of one of his personal non-delegable duties: and this is true notwithstanding the negligence of a fellow-servant contributed to the injury, if such negligence of the master was the efficient cause of the injury.

11. INSTRUCTIONS—*should not assume facts in dispute.* An instruction is properly refused which assumes the existence of facts in dispute.

12. INSTRUCTIONS—*should be based upon the evidence.* Instructions are properly refused which are not predicated upon the evidence.

13. SPECIAL INTERROGATORIES—*should relate to ultimate facts.* Special interrogatories are properly refused which ask the jury to pass upon the evidentiary, and not ultimate facts.

14. VERDICT—*when not excessive.* A verdict for $1,250 is not excessive where the plaintiff, as a result of the accident, lost three of the fingers of one hand and the remaining fingers of such hand are rendered of little use, notwithstanding his earning power does not appear to have been impaired; the fact that many occupations requiring the use of his hands are forever closed to him, must be taken into consideration.

Action on the case for personal injuries. Appeal from the Circuit Court of Greene County; the Hon. OWEN P. THOMPSON, Judge, presiding. Heard in this court at the November term, 1903. Affirmed. Opinion filed December 18, 1903.

H. C. WITHERS and H. T. RAINEY, for appellant.

D. J. SULLIVAN, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action of trespass on the case, brought by Thomas Bell, against the Chicago & Alton Railway Company, appellant, to recover damages for personal injuries alleged to have been sustained by appellee, through the negligence of appellant's servants, while he was in its employ as a laborer. The plaintiff recovered a verdict and judgment for $1,250, from which an appeal is prayed by the defendant.

The declaration consists of two counts, the first of which charges in substance that the defendant, on November 11, 1902, was possessed of and operating a certain line of railway and was operating in connection therewith, a certain building equipped with appliances for coaling railroad engines; that the plaintiff was, on the said day, employed

as a servant by the defendant, in the capacity of laborer; that the plaintiff was on said day wholly inexperienced in railroad work and the duties connected with the coaling of engines, and unacquainted with the perils attending such duties; that it was the duty of the defendant to use reasonable diligence to avoid putting plaintiff to work in a dangerous place without informing plaintiff of such dangers as were not obvious to the employment; that defendant not regarding its duty in that behalf, negligently and carelessly directed plaintiff to work in a certain pit, used in connection with the building aforesaid for the coaling of engines, over which said pit the defendant ran its engines, without notice to the employees working therein, without informing plaintiff of the dangers attending such employment, and that engines would be driven over said pit without notice to him while he was so employed; so that the plaintiff, while working in the pit aforesaid, in obedience to the directions of defendant's foreman, and while exercising due care and without notice that an engine was about to be driven over said pit, was, by reason of the negligence of the defendant as aforesaid, struck by said engine, while it was being so driven over said pit by the defendant, and injured, etc.

The second count avers in substance, that on November 11, 1902, defendant was operating a line of railway, and was using in connection therewith, a certain building situated in its yards, equipped for and used in the coaling of its engines; that in connection with said building, defendant had and used a certain pit over which its engines were driven and into which the cinders from the engine's firebox were discharged; that on said day the plaintiff, who was then and there inexperienced in railroad work, and unacquainted with the duties required of servants employed in and about said building and pit used in coaling engines aforesaid, was employed by the defendant, as a common laborer, and was on said day directed by defendant's foreman to work in the pit aforesaid; that it was the duty of the defendant to use reasonable diligence to see that the

place in which plaintiff was so required to work was reasonably safe, and to use reasonable diligence to inform plaintiff of all perils connected with the duties he was required to perform, which were not obvious to the employment and which were unknown to plaintiff; that the defendant, not regarding its duty in that behalf, while plaintiff was so employed in the line of his duty under the direction of defendant's foreman in the pit aforesaid, negligently and carelessly caused one of its engines to be driven over said pit, without providing any proper notice or signals to be given to plaintiff, and without providing any means by which plaintiff and others working in said pit could know when engines were about to be driven over said pit, whereby plaintiff, while exercising due care and caution, was struck by said engine, and injured, etc.

To this declaration a general and special demurrer was filed, setting out that the declaration failed to sufficiently show in what respect the dangers were not obvious, but that on the contrary said declaration shows that the dangers, on account of which the alleged injuries occurred, were in plain sight and were obvious. The demurrer was overruled and exceptions were taken. The general issue was then filed.

At the close of plaintiff's testimony in the court below, a motion was made to exclude the evidence and to direct a verdict for the defendant. The motion was overruled and was renewed again at the close of defendant's testimony and again overruled.

Appellant relies upon the following errors for a reversal:

1. The demurrer to the declaration should have been sustained.

2. Appellee had an opportunity to learn about the dangers connected with his service, and the dangers were also obvious. The evidence does not sustain the verdict. The verdict is excessive, and is not supported by the evidence, and a new trial should have been granted.

3. The motions to exclude the evidence should have been sustained.

4. The court below gave improper instructions for plaintiff and refused proper instructions for defendant.

5. The court below refused proper findings of fact tendered by defendant.

The facts in the case as disclosed by the record are substantially as follows: In November, 1902, appellee, who had been employed on a farm, moved to Roodhouse, Illinois, where the coaling station and pit of appellant are located, and obtained employment from appellant company, "journal oiling" in its yards. Ten or twelve days thereafter he applied to one Reed, the foreman of appellant's roundhouse, who had charge and control of the cinder pit and coaling station and the employment of the men working in and about the same, for other employment. Reed told him that he could only give him work in the pit, and asked him how long he wanted work, and whether he was accustomed to hard work; to which appellee replied that his intention was to work until spring, and that he was used to hard work. Reed then told him to go to work in the pit in the morning. On the following morning appellee reported and was put to work in the cinder pit, where he continued working from seven to eleven o'clock in the morning, when he met with the accident mentioned in the declaration.

It is not denied that no instructions, notice or warning were at any time given to appellee by any one in the employ of the appellant, other than as herein stated.

The cinder pit in question was an excavation under and between the rails of the coaling track. It was about 150 feet in length, three and one-half feet in depth below the top of the rails, six feet in width, and was cemented on the bottom and sides. Toward the lower end of the pit was the coaling station, and within 150 feet thereof the roundhouse. The pit was used in connection with the removal of ashes and cinders from engines. Inside of the cinder pit, operated on separate rails from the main track, were a number of small iron cars or tubs, each of which entirely filled the opening and extended up to the top of the rails of the coaling track. Into these the ashes and cinders from the engines were raked.

C. & A. Ry. Co. v. Bell.

Immediately opposite the coaling station was an ash dump, five or six feet wide, into which the cinders from the cars or tubs were dumped. The ashes were then elevated and disposed of by machinery connected with the coaling station. The coaling track extended for 300 feet north of the north end of the cinder pit, and there were no obstructions to the view on either side thereof. Three hundred feet north of the northern extremity of the cinder pit was a switch, through which all engines entered for the purpose of discharging their cinders and taking on coal and wood at the coaling station. The custom or practice usually followed was that when an engine came in off the road, it was driven down the coaling track over the pit and stopped over one of the tubs. A man employed there, and called the "fire-knocker," then climbed into the engine and knocked the ashes and cinders down into the ash pan of the engine. While he was doing this, another man, called the "pitman," would get under the engine and with a hoe, rake the ashes and cinders into the tub. Both men then accompanied the engine to the woodpile just below the coaling station, where wood was taken on with which to start fires. The engine was then coaled and was ready to go to the roundhouse or out on the road. The coaling track ran directly south into the roundhouse. There were no obstructions on either side of the coaling track, except the coaling station, which did not extend over the track, and there was nothing to prevent one working in the pit from observing the approach of engines, from the time they entered the switch until they reached the pit. On the morning of the accident, appellee reported for duty shortly before seven o'clock. The night force was yet at work, and the night pitman was in the pit, raking out cinders from an engine which stood over it. At seven o'clock he quit work, and appellee, without receiving any instructions from any one, took his place and finished raking the cinders into the tub. About that time one Shinnall, the day "fire-knocker," appeared for duty and when the engine moved away from the pit both he and appellee accompanied it to the wood-

pile, where they supplied it with wood. This engine after coaling went on down to the roundhouse.

No other engine came in thereafter until ten o'clock, when two came from the north. Shinnall went to throw the switch to let the engines in on the track and appellee accompanied him, to see, as he says, how it was done. Shinnall then returned to the pit with the first engine, while the other stopped. He then assisted the engineer in "spotting" the engine, that is, stopping it over one of the tubs in the pit. One Campbell, who had charge of the coaling station at this point, told appellee to watch Shinnall "spot" the engine as that would be a part of his (appellee's) duties.

When this first engine was stopped over the tub, Shinnall got up into the engine and knocked out the cinders and ashes, while appellee climbed into the pit and raked them into the tub. Shinnall then went with the engine to supply it with wood from the woodpile and appellee proceeded to clean the second engine which had moved over the pit on a signal from Shinnall. At this time, appellee testifies, he noticed another engine coming northwest from the roundhouse, on the track northeast of the coaling track. The second engine was then cleaned out and moved to the roundhouse.

Appellee remained in the pit to complete the dumping of the ashes, there being two full tubs in the pit in addition to the empty ones. He pushed one of these tubs to the dump and after dumping it, pushed it on across the dump. He then dumped the other tub and started to pull it north in the pit, to place it in a convenient place for the next engine. He testifies that he pulled the tub back with both hands, walking sideways, his left side toward the north and toward the switch. He pulled the car back about twenty feet, and within five feet of an empty car standing in the pit, and had started to climb out of the pit, placing his left hand on the east rail of the track, when he was struck by the engine which he had noticed on the other track and which came onto the pit as the others had done, backing, with the tender first and from the north. The switchman who was on

the steps on the east side of the engine saw him as he was about to climb out and shouted to the engineer to stop the engine. The engineer reversed the engine, bringing it to a standstill within five feet. It however ran over and upon appellee's hand and crushed three of his fingers so as to necessitate their amputation.

As a rule, when engines returned from a trip over the road they were driven to the cinder pit, before going to the roundhouse, where the fire and cinders were removed. They were then taken to the roundhouse to be prepared for the next trip.

The evidence further tends to show that while it was the duty of the hostler of the engines to handle them in and about the roundhouse, when he was busy, any of the employes about the roundhouse were permitted to take such engines in and out when directed by the foreman; that the engine which caused the injury to appellee was driven out of the roundhouse by one Jepson, a boiler maker, employed generally thereabout, and driven north on a track parallel to and within eight or ten feet of the coaling track, to a switch at a distance of about 300 feet north of the pit. The switch was then thrown by one Elliott, a boiler helper, who was assisting Jepson, and the engine backed in upon the coaling track, to and over the pit. Jepson testified that after it got on the coaling track, the engine was driven slowly and that he rang the bell continuously; that he was riding on the right hand side of the engine looking at the pit but saw no one until within ten feet thereof, when Elliott shouted to him that there was a man in the pit; that he immediately applied the air-brake and stopped the engine, which did not move over five feet after he heard the alarm.

Elliott testified that he was standing on the steps on the right-hand side of the engine, which was the side of the track where appellee was injured, and was looking down the track toward the pit; that he failed to see appellee until they were right on him; that when he first saw appellee he was taking hold of the tub to climb out of the pit; that the engine was running about three miles an hour, and that the bell was ringing continuously.

The evidence further shows that there were no rules provided for the safety of men working in the pit; that engines were driven thereon without notice to them, and that appellee was not informed of these facts.

First.   Appellant insists that the demurrer to the declaration should have been sustained for the reason that the averments thereof disclose that the hazard attending appellee's employment was obvious, and not latent.   Having pleaded to the merits, appellant thereby waived all objections to the declaration, unless the same is so defective that it will not sustain the judgment.   P. C. C. & St. L. Ry. Co., v. Robson, 204 Ill. 254.

While it is true that a railroad may ordinarily be an unsafe place upon and about which to work, and that it may have been apparent to appellee that the cinder pit could only be utilized after engines had been driven upon it, we do not think it can be said, as a matter of law, that by proceeding to work in the pit in obedience to the directions of appellant's foreman, as averred in the declaration, appellee thereby assumed such risk so as to bar a recovery.

It is not averred that the cinder pit, of itself, was in any way defective or unsafe.   The danger involved in appellee's employment, under the averments of the declaration, was that engines were driven over the same without notice or warning to those who might be at work therein.

Appellee did not assume all the risks incident to his employment.   He assumed only such incident risks as were usual and ordinary and which remained so incident after appellant has used reasonable care to remove them, or, if extraordinary, such as were obvious and exposed him to danger so imminent that an ordinarily prudent man would not have remained in the employment.   Malott v. Hood, 201 Ill. 202.

Whether the danger existed, whether it was usually and ordinarily incident to the employment, and whether if extraordinary, it was so obvious that an ordinarily prudent person would not have remained in the employment, were all questions of fact for the determination of a jury.

The declaration further avers that appellee was directed by appellant's foreman to work in the pit, and that while there working, in obedience to such directions, he was injured.

Even if appellee had some knowledge of the dangers attendant upon the work he was ordered to do, he was not bound to disobey on pain of assuming the risk, but might perform the service and hold his employer liable, unless the danger or risk was such that an ordinarily prudent man would not encounter it. Illinois Steel Co. v. Ryska, 200 Ill. 280.

As we have said, the declaration avers that the place was rendered dangerous because of the fact that engines were driven over the pit without notice or warning to those who might be employed therein. To properly state a cause of action, it was essential that appellee should aver a want of knowledge on his part of the facts which rendered the pit a dangerous place to work.

While neither count expressly avers such want of knowledge, we think the same may be fairly inferred from the several general averments of inexperience, of the danger of the place and the failure of appellant to inform appellee thereof.

In this particular the declaration is clearly argumentative and would therefore be obnoxious to special demurrer, but appellant having pleaded thereto after demurrer overruled, cannot now raise the objection.

If appellee was inexperienced and did not know, and was not informed, that engines were driven over the pit without notice or warning, it cannot be said, as a conclusion of law, that the danger arising therefrom was obvious. If the danger was latent, it was clearly the duty of appellant to inform appellee of the existence thereof. We think the declaration is sufficient to sustain the judgment.

Second. Appellant contends that the evidence shows that appellee was not inexperienced in railroad work; that the conclusion is irresistible that he was experienced; that for ten days prior to his employment in the cinder pit he

had been employed "journal oiling" at the stock yards in the vicinity of the cinder pit; that during that time he had lived within four blocks of the pit; that he had walked past the pit in going through the yards, and that he therefore must have known about the operation of engines in and about the yards, the purpose for which the cinder pit was used, and the manner and mode of its use and operation.

The record does not warrant this contention. Appellee testified that the place where he was employed oiling journals was in a part of appellant's yards about a quarter of a mile from the pit; that he had seen the pit and tubs twice while going through the yards but had paid no attention to the work; that he didn't know exactly what it was used for; that before moving to the town, while he might have seen the coal dump building, which was four blocks distant from the road, he never saw the cinder pit.

Third. It is strenuously contended by appellant that it appears from the evidence that the danger attending his employment in the pit was obvious. Whether or not the peril causing an injury is obvious, and whether the risk thereof was assumed by the servant, are ordinarily questions for the jury. Swift v. O'Neill, 187 Ill. 337. They become questions of law only when but one conclusion can be drawn from the evidence by all reasonable minds. Brown v. Siegel, 191 Ill. 226; Chicago Screw Co. v. Weiss, 208 Ill. 536.

Risks may be obvious to an experienced servant and yet not so to a person unacquainted with the surroundings.

"Where there are perils or hazards incident to an employment of which the master has, or should by the use of ordinary care, have knowledge and which the servant, from ignorance or inexperience, is not capable of appreciating or understanding, the master must warn or inform the servant of such perils or hazards." Consolidated Coal Co. v. Haenni, 146 Ill. 614; Dallemand v. Saalfeldt, 175 Ill. 317.

We think the jury were warranted in finding that appellee was wholly inexperienced in the work assigned to him and that such fact was known to the foreman Reed and to the assistant foreman Campbell.

Appellee was directed to work in a place with which he was wholly unfamiliar, and, the pit being in good repair, the only circumstance which it could be said rendered it a dangerous place to work, was the fact that engines were driven over it. That this danger could have been easily and readily obviated by establishing rules governing the setting of engines over the pit or providing that signals be given to warn those working therein of the approach of engines, is too clear to require discussion or argument. Appellee had a right to presume that all proper attention would be given to his safety and that he would not be needlessly exposed to risks not necessarily resulting from his occupation, and which might be obviated by proper precaution on the part of his employer. P. C. C. & St. L. Ry. Co. v. Hewitt, 102 Ill. App. 428.

If the adoption of rules governing the driving of engines over the pit and providing signals or means of warning, were necessary to the safety of those working therein, appellant had not discharged its duty until it had adopted such rules, (C. & G. T. Ry. Co. v. Spurney, 197 Ill. 471) and appellee had a right to presume that appellant had done its duty in that respect and that engines would not be driven over the pit without notice. Mill Co. v. Johnson, 114 Ill. 57.

We think the jury were warranted in finding that the risk or danger attending his employment was not assumed by appellee.

Fourth. Appellant further insists that appellee was guilty of contributory negligence. This was a question for the jury to determine from all the facts and circumstances appearing in evidence.

In answer to the first special interrogatory, the jury found that appellee was at the time of the accident exercising ordinary care for his own safety.

If the jury believed that he was ignorant of the fact that engines were likely to be driven over the pit without warning, and that he relied upon the presumption that proper attention had been given to providing for his safety, and

that he would not be needlessly exposed to risks not necessarily resulting from his employment, which we think they were justified in doing, they were warranted in their answer.

Fifth.   It is contended by appellant that the negligence, if any, which caused the injury was that of the engine crew or of Shinnall, all of whom were fellow-servants of appellee under the law of the state.

Under the averments of the declaration this fact, if true, would not constitute a defense thereto.

The negligence charged in the declaration was the driving of engines over the pit without notice or warning, and this the jury undoubtedly found was the proximate cause of the injury.

Notwithstanding the injury to appellee may have been the combined result of the negligence of the appellant and the fellow-servants of appellee, if the negligence of appellant was the efficient cause of the injury, (C. & A. R. R. Co. v. Scanlan, 170 Ill. 106; Ide v. Fratcher, 194 Ill. 552; Pullman Palace Car Co. v. Laack, 143 Ill. 245,) and the same would not have been occasioned but for such negligence, the fact that the negligence of appellee's fellow-servants may have contributed thereto, would not relieve appellant from liability.   C. & N. W. Ry. Co. v. Gillison, 173 Ill. 264.

Sixth.   Appellant contends that the refusal of a number of instructions offered by it, was error.

Instructions numbered 1, 2, and 15 were properly refused for the reason that they assume that the question as to whether appellee was a fellow-servant with the engine crew, was the ultimate and decisive issue in the case.   They are also in other respects defective and inaccurate.   Instruction No. 5 is substantially covered by No. 2, given for defendant.   It is also misleading.   Illinois Steel Co. v. McFadden, 196 Ill. 344.   The principle announced by No. 6 is substantially covered by appellant's given instructions Nos. 5 and 6.   Nos. 9 and 10 were properly refused for the reason that there is no evidence in the record warranting them.   It does not appear that appellee received any instructions from any one except as to the manner of

C. & A. Ry. Co. v. Bell.

spotting the engine only. No. 11 does not state the law correctly. It tells the jury, in effect, that the master is not bound to notify the servant of the ordinary dangers of his employment. This is the law where the danger is obvious, but not otherwise, and does not apply where the servant is inexperienced. Appellant's refused instruction No. 13 is substantially covered by instructions 3, 4 and 10, given for appellant. No. 15 is also clearly erroneous, as it tells the jury that if they find that appellee and the engine crew were fellow-servants, they should find the defendant not guilty, regardless of whether or not the master, appellant, was itself negligent.

No. 14 was properly refused, there being no proof that appellee had any knowledge prior to his employment of the methods of operating the ash pit, or of the danger incident to the same.

Nos. 7 and 8 tell the jury in effect that if they find that the negligence of Shinnall was the proximate cause of the injury, and that he and appellee were fellow-servants, their verdict should be for the defendant. They were properly refused, there being no evidence in the record tending to show that Shinnall was under any obligation to notify appellee as to how engines would be brought in.

We find no error in the instructions given in behalf of appellee and our attention has been directed to none in argument.

Seventh. Appellant complains that the trial court improperly refused to submit to the jury several special interrogatories, tendered by it.

We think that the interrogatories referred to were properly refused.

Those numbered 11, 12, 13 and 17 were substantially covered by interrogatory numbered 4 which was submitted to the jury. Interrogatories 8, 9, 10, 14 and 15 relate to the question as to whether or not the injury to appellee was due to the negligence of a fellow-servant, which under our views of the issues involved in the case is evidentiary merely and not ultimately decisive of the case.

Special interrogatories should be submitted only upon ultimate facts.   Gundlach v. Schoot, 192 Ill. 509.

Eighth.   It is contended that the damages awarded are excessive; that appellant defrayed all expenses for care and medical attention rendered appellee; that appellee has earned more money since his disability than he did before; and that, therefore, his damages were limited to the pain and suffering undergone.

The evidence shows that as a result of the accident three of his fingers were necessarily amputated.   He testifies that the remaining fingers of the hand are of very little use to him except in light work.

While he admits that since he has been able to work, he has bought and sold old junk, and on some days has been able to make $4.50 a day, it does not follow that he has sustained no pecuniary damages.   He was at the time twenty-eight years of age.   He is permanently disabled to use his hand so that many lines of manual labor have been forever closed to him.

We do not regard the damages as excessive.

We have carefully examined the entire record and find no error therein prejudicial to appellant.   The judgment will therefore be affirmed.

*Affirmed.*