## Samuel Wilson, Appellee, v. J. T. Counsell, Appellant.
## Gen. No. 18,349.

1.  Master and Servant, § 238*—*essentials to relation of vice-principal.* A servant may be a vice-principal though he has no power to employ and discharge men under him.

2.  Master and Servant, § 242*—*when servant performing work of a fellow-servant is vice-principal.* A servant who has control of the manner of performing the work, and to whom other servants are directed to report for work, *held* a vice-principal though engaged in performing the work of a fellow-servant.

3.  Master and Servant, § 220*—*liability for combined negligence of master and a fellow-servant.* Master is liable to a servant

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

for injuries resulting from the combined negligence of the master and a fellow-servant.

4. MASTER AND SERVANT, § 241*—*liability for negligence of vice-principal combined with his negligence as a fellow-servant.* Master is liable to servant for injuries where the proximate cause of the injury was a negligent order of vice-principal combined with his negligence while performing the work of a fellow-servant.

5. MASTER AND SERVANT, § 411*—*liability when injury results from negligent order of vice-principal.* Servant may recover for injuries resulting from obeying a negligent order of a vice-principal unless the danger was so imminent that a reasonably prudent person would not have encountered it.

6. MASTER AND SERVANT, § 755*—*questions for jury.* Whether, in obeying a negligent order of vice-principal, the danger was so imminent that the servant should not have encountered it is a question for the jury.

Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Affirmed. Opinion filed October 9, 1913.

WINSTON, PAYNE, STRAWN & SHAW, for appellant; EDWARD W. EVERETT and CHARLES J. McFADDEN, of counsel.

GALLAGHER & MESSNER, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

Appellee brought suit against appellant and recovered a judgment for nine hundred dollars for personal injuries sustained while assisting in unloading a car of telegraph poles. Appellee was employed by the appellant as a teamster. He was an extra man, hired by one Peterson, appellant's superintendent, and prior to the accident was driving a dump wagon. On July 26, 1910, when he and another teamster, named Seitz, reported for work at defendant's barn, they were told by Peterson to go to a team track in the yard of the Commonwealth Edison Company, where there was a car of telegraph poles to be unloaded. Appellee told Peterson that he "did not understand that kind of

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

work," but Peterson, after providing them with ropes and cant hooks, told them to "report to Herb Thompson," who would "tell them what to do and show them what to do." Thompson was another of defendant's employes, whose work was to unload poles from railroad cars and to shave, trim and paint them, in the yard of the Edison Company. Appellee and Seitz went to the yard as directed and reported to Thompson. There was a flat car then standing on the track, loaded with telegraph poles thirty-five feet in length and tapering in thickness from two feet or more at one end to a foot or less at the other end. These poles weighed about seven hundred pounds each. They were held in place upon the flat car by stakes driven into holes or pockets at each side of the car and the stakes were kept from spreading by wires. When appellee and Seitz reported to Thompson, they told him that Peterson had sent them to help unload the car of poles. Thompson first directed them to clear a space for the poles by moving to one side other poles then lying upon the ground. Thompson and Seitz then climbed upon the car while Wilson, at Thompson's direction, remained on the ground. Thompson cut the stakes on one side of the car at a point below the upper tier of poles. Then he fastened ropes to the stakes nearest the ends of the car and passed the same over the top of the carload to stakes upon the other side of the car, where a "turn or two was taken around the stake," so that the ropes could be "eased off" when the poles were rolled or pushed into the slack of the ropes and lowered to the ground. After thus tying the ropes, Thompson and Seitz, with cant hooks, rolled the heavy end of the nearest pole over the stake at the side of the car, where it was held by the rope and by that means lowered safely to the ground. In repeating this process at the other end of the car, the small end of the first pole handled was caught between one of the stakes and the load of poles. Thompson

unfastened the rope tied to the stake and Seitz pried up the pole with his cant hook. Then Thompson, standing on the end of the flat car, lifted the end of the pole above the top of the stake. As he did this, he called out to Wilson: "Go in and tie the rope." Wilson inquired, "Can you hold the pole?" Thompson replied: "Yes, we can, for two or three minutes anyhow, maybe more." In obedience to this command of Thompson, Wilson stepped to the side of the car and was tying the rope to the stake when Thompson's strength gave out and the pole slipped and fell upon Wilson, injuring him seriously.

It is first contended that Thompson and Wilson were fellow-servants, and that therefore the court erred in refusing to instruct the jury to find the defendant not guilty. It was shown by the evidence that Thompson had no power to hire or discharge appellee, and it is insisted that there is no evidence tending to prove that Thompson was a foreman or vice-principal, for whose negligent acts appellant is liable. In *Chicago & A. R. Co. v. May*, 108 Ill. 288, it was held that when a master confers authority upon one of his employes to take charge and control of a gang of men in carrying on some particular branch of his business, such employe, in governing and directing the movements of the men under his charge with respect to that branch of the business, is the direct representative of the master; that the position of such an employe "is one of superiority," and "when he gives an order within the scope of his authority, if not manifestly unreasonable those under his charge are bound to obey," and hence the master is held responsible for the consequences. "For instance, if the section boss of a railway company, while working with his squad of men on the company's road, should negligently strike or otherwise injure one of them, causing his death, the company would not be liable; but when the negligent act complained of arises out of and is the direct result of the exercise of the authority conferred upon him

by the master over his co-laborers, the master will be liable. In such case he is not the fellow-servant of those under his charge, with respect to the exercise of such power, for no one but himself, in the case supposed, is clothed with authority to command the others." In *Chicago, R. I. & P. Ry. Co. v. Rathneau,* 225 Ill. 278, the Court said that "the authority and reason of the *May* case (*supra*) have never been questioned in this State so far as we are aware, but, on the contrary, the case has been often cited, approved and followed." In the *Rathneau* case, *supra,* the plaintiff was one of a gang of laborers who were loading rails upon a flat car. The rails were shoved up along skids by means of round stakes with a block end, and there was danger that if a rail being shoved up should come in contact with anything and turn over, the men shoving it would lose their hold on it, by their sticks being thrown out of place, and it would slide back down the skids. The evidence tended to show that one O'Rourke was in charge of the gang and was directing the men and gave orders as to the means to be adopted in performing the work. Also that, with knowledge of the fact that one of the stakes at the side of the flat car was too high, he ordered the men to push up a rail. The men did so and the rail struck the stake, turned, slid back down the skids and injured the plaintiff. It was urged that the injury was caused by O'Rourke's negligence and that he and the plaintiff were fellow-servants, but the Court said (p. 282): "The question whether or not O'Rourke was a vice-principal was a question of fact to be determined by the jury, and there being evidence fairly tending to support the position of the appellee that he was acting as a vice-principal in directing the men and controlling the manner of performing the work in which they were engaged, the court properly refused to give the peremptory instruction." In the same case the court also said that "it was not necessary for appellee to show, in order to prove O'Rourke was a vice-principal,

that O'Rourke had the power to employ and discharge the men under him," citing *Fraser & Chalmers v. Schroeder*, 163 Ill. 459, as authority for that statement.

We think that the jury were justified in finding from the evidence in this case that Thompson was given such authority over Wilson and Seitz as to make him a superior servant, or vice-principal, of the defendant as to all matters relating to the manner in which the work should be done, and what work should be done, by Wilson and Seitz. In the exercise of that authority, Thompson commanded appellee to go into a position of danger and tie the rope. In giving that command Thompson knew that whether it could be safely obeyed depended upon his ability and that of Seitz to hold up the pole while appellee was tying the rope. In giving such an order, Thompson acted as the representative of appellant, and his negligence in giving the order was the negligence of appellant. Moreover, if it be conceded that in lifting the pole and letting it fall upon appellee Thompson was performing the work of a fellow-servant, we think it is clear from the evidence that but for the negligent order of Thompson, commanding Wilson to go under the pole for the purpose of tying the rope, the accident would not have occurred. Hence, the proximate cause of the accident was the negligence of Thompson, the superior servant, in giving the negligent order, combined with the negligence of Thompson, the fellow-servant, in letting the pole fall. The rule is well settled that where injury results from the combined negligence of the master and a fellow-servant the master is liable. *Illinois Southern Ry. Co. v. Marshall*, 210 Ill. 562; *Roebling Construction Co. v. Thompson*, 229 Ill. 42. In the latter case the Court said (p. 45): "It is no longer open to question in this State that the vice-principal may, as regards certain acts, be a fellow-servant with other servants over whom in his capacity

as vice-principal, he has control and power of direction. This rule, however, will not exempt the master from liability where the injury results from the negligence of the vice-principal as such, in combination with the negligence of such vice-principal in the capacity of fellow-servant. This is the application of the well recognized rule that where the injury results from the combined negligence of the master and fellow-servant, and the negligence of the master is such that the injury would not have happened but for his negligence, the master is liable.'' We are of the opinion that it was not error to refuse the peremptory instruction.

It is next contended that appellee assumed the risk, even if Thompson was a vice-principal or foreman, because, it is said, the order given was an order to encounter an obvious danger, which was one of the incidents of the employment. In *Illinois Steel Co. v. Schymanowski,* 162 Ill. 447, the Court said (p. 459): ''A master is liable to a servant when he *orders* the latter to perform a dangerous work, unless the danger is so imminent that no man of ordinary prudence would incur it. Even if the servant has some knowledge of attendant danger, his right of recovery will not be defeated, if, in obeying the order, he acts with the degree of prudence which an ordinarily prudent man would exercise under the circumstances. When the master orders the servant to perform his work, the latter has a right to assume that the former, with his superior knowledge of the facts, would not expose him to unnecessary perils; the servant has a right to rest upon the assurance that there is no danger, which is implied by such an order. The master and servant are not altogether upon a footing of equality. The primary duty of the latter is obedience, and he cannot be charged with negligence in obeying an order of the master, unless he acts recklessly in so obeying. Whether he acted thus recklessly in obeying his mas-

ter's order or whether he acted as a reasonably prudent person should act, are questions of fact to be determined by the jury." (Citing cases.) The same rule is announced in the following cases: *Western Stone Co. v. Muscial,* 196 Ill. 382, 386; *Illinois Steel Co. v. Ryska,* 200 Ill. 280; *Hartrich v. Hawes,* 202 Ill. 334; *Pressed Steel Car Co. v. Herath,* 207 Ill. 576; *Henrietta Coal Co. v. Campbell,* 211 Ill. 216. In *Chicago & E. I. R. Co. v. Heerey,* 203 Ill. 492, the same principle is stated in a somewhat different form, and it is held that in cases of a direct command the question of assumed risk does not arise at all, since that question is removed by the command, and the only question remaining is whether the servant was guilty of contributory negligence in obeying the command. "In the case of a promise to repair, or of a command, and perhaps some other cases, the question is one of contributory negligence on the part of the servant, depending upon whether the danger was so great that an ordinarily prudent person would not have encountered it. * * * In those cases the question of assumed risk, which is founded in contract, is removed by the promise to repair, the coercion or other sufficient cause, but the question of contributory negligence involved in every case still remains. The employee must always exercise the degree of care which an ordinarily prudent person would have exercised under the same circumstances, but he does not assume the risk resulting from a direct command." (Ibid. p. 503.) The same distinction is repeated in *Springfield Boiler Co. v. Parks,* 222 Ill. 355, at page 359, as follows: "When the servant is directed by the master, or one who stands to the servant in the place of the master, to encounter a danger, and the servant, by reason of such direction, does encounter the danger and is injured, the master cannot escape liability unless the danger which the servant is directed to encounter is so apparent that an ordinarily prudent person would not have encountered it, in

which event the master escapes liability on the ground of contributory negligence on the part of the servant, rather than that of assumed risk." (Citing authorities.)

Under the authority of these decisions, and especially in view of the character of the order given by Thompson, it must be held that appellee is not precluded from recovering damages for the injury sustained, unless the danger was such and so imminent that a reasonably prudent person would not have encountered it, which was purely a question of fact for the jury. From the evidence in this case, we cannot say that the verdict in that respect was manifestly contrary to the preponderance of the evidence. What we have said above disposes of the further contention that the evidence fails to show that any negligence of the defendant was the proximate cause of the injury.

It is also insisted that the court erred in giving certain instructions. Without discussing these in detail, it will suffice to say, that after due consideration of the arguments advanced, we think there was no reversible error in this respect. The instructions complained of do not materially differ from the forms that have been repeatedly approved, and they were applicable to the facts in evidence.

Finding no reversible error in the record, the judgment of the Circuit Court will be affirmed.

*Affirmed.*