George Hinchliff v. George Robinson, administrator, etc.

Gen. No. 4,464.

1. FELLOW-SERVANTS—*how question of, determined.* As a general rule, it is for the jury to determine whether servants of a common master are fellow-servants.

2. CONTRIBUTORY NEGLIGENCE—*when party using scaffold not guilty of, as a matter of law.* Held, from the particular evidence of this case, that the plaintiff in using the scaffold in question at the time of the injury was not guilty of contributory negligence as a matter of law.

3. CONTRIBUTORY NEGLIGENCE—*when master cannot claim immun-*

Hinchliff v. Robinson.

*ity by reason of.* Where the master fails to furnish his servant with a reasonably safe place in which to perform his work and peremptorily orders him to use such unsafe place, he cannot escape liability upon the ground that the complainant was guilty of contributory negligence, unless the danger was so apparent that a man of ordinary prudence would not have incurred the risk.

4. ASSUMED RISKS—*what are.* The risks which the servant assumes are those ordinarily incident to the business as it is conducted. They do not include hazards resulting from the failure of the master to do his duty in providing a reasonably safe place for the servant to work. Assumed risks are those which cannot be obviated by the adoption of reasonable measures of protection by the master.

5. ORDINANCE—*when proof of, sufficient on appeal.* When an ordinance is sought to be proved by a book said by counsel to contain the same and according to his statements purporting to be published by authority of the city council, such proof on appeal is deemed sufficient, in the absence of specific objections.

6. PREPONDERANCE OF EVIDENCE—*when instruction as to, will not reverse.* Notwithstanding an instruction on this subject which pertains more particularly to the effect upon the preponderance of the evidence of the greater number of witnesses, may be faulty in a slight particular, yet it will not reverse where in one portion thereof it correctly states the law and the judgment is apparently correct.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Kane County; the Hon. HENRY B. WILLIS, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed March 8, 1905.

KRAUS, ALSCHULER & HOLDEN, for appellant.

BOTSFORD, WAYNE & BOTSFORD and FISHER & MANN, for appellee.

MR. PRESIDING JUSTICE FARMER delivered the opinion of the court.

Appellant is a contractor, and in February, 1901, was engaged in the construction of a large fire-proof building for the National Watch Company at Elgin, Illinois. The building had progressed far enough that the floor joists, which were steel I-beams, for the third floor had been placed in position. These beams were sixteen feet long, had a five-inch face and were laid five and one-half feet apart from center to center. As soon as these joists or I-beams were laid, boards were laid across them next to the

wall to afford a place for material and for the men to work. This was called a scaffold, and brick and mortar were brought up to this scaffold in wheelbarrows by means of an elevator, and were taken from the elevator and delivered along this scaffold to the place where needed. The scaffold was next to the east wall of the building and extended from the south wall where the elevator came up, north, some thirty or forty feet. It was eleven boards wide, and composed of boards eight to ten inches wide and two inches thick. This scaffold or temporary floor, next to the wall, was occupied by masons as a place to stand while laying up the wall. Back of the masons stood the mortar boards upon which mortar was delivered, and between the mortar boards, piles of brick; between the brick piles and the outer or western edge of the scaffold was a runway, some three feet in width used by persons bringing material, to run their wheelbarrows over. The scaffolding was built by resting the south end of the boards upon the I-beams and lapping the north end over the board next north. This was done so there would be no elevation to run the wheelbarrows over with loads. The south end of each plank in the scaffold resting on an I-beam and the north end on another two-inch board would have the effect of raising the middle of the board off the center beam slightly and make it springy. To avoid this springy or shaky condition of the scaffold, pieces of wood were placed on the center beam so that the board would rest firmly in the middle. According to plaintiff's evidence, the piece of wood at the place of injury used for this purpose, was a two by four laid flat on the center beam, and according to defendant's evidence it was a strip of board one inch thick.

February 26th, soon after work was begun in the morning, Rogers, an employee of appellant, who was at the time engaged in receiving material in wheelbarrows from the elevator and delivering it over the scaffolding to the places needed, while attempting to deliver a load of mortar weighing from 450 to 500 pounds fell from the west side of the scaffolding to the ground below and received injuries from

Hinchliff v. Robinson.

which he died.   This suit was brought by his administrator against appellant and the Elgin National Watch Company for damages.   The Watch Company was found not guilty and a verdict and judgment rendered against appellant for $2,500.

Appellee sought to show, and his proof tended to do so, that the deceased's fall was caused by the western or outer plank of the scaffold tipping to the west as he was passing over it with the loaded wheelbarrow, and that the tipping resulted from the fact that the timber laid on the center I-beam upon which the board rested, lacked a few inches of extending as far west as the board, and there was proof also tending to show that the north end of the board where it lapped over the one lying on the next I-beam, extended west of the board it was lying on a few inches, so that a person stepping near the outer edge of the board would be likely to cause it to tip toward the west.   One witness who claimed he saw the accident testified it resulted from the board tipping as above described.   He says he was looking at Rogers as he was running his wheelbarrow over the scaffold and that when he reached the plank which is said to have projected beyond its supports, the wheelbarrow became unbalanced and in trying to balance it, deceased stepped on the plank which tipped and he fell.   He further testified that he walked immediately afterwards on the same board and that it tipped with him, but by quick jumping he saved himself.   The wheel of the wheelbarrow was not on this outer board, and when found after the fall of Rogers was tipped to the west, but still rested on the scaffold.   Other witnesses testified substantially to the same condition of the board and that it would tip if one stepped on the outer edge.   This appears to have been the only defect in the construction of the platform or scaffold that could have been responsible for Rogers' fall.   Upon the proposition as to whether the conditions described existed or not the evidence was conflicting, appellant's proof being directly contradictory to appellee's.   Appellant's counsel in a very lengthy and exhaustive analysis of

the testimony endeavors to show that appellant's witnesses were more worthy of belief than appellee's and that if the jury based its verdict upon the existence of the conditions described by appellee's witnesses, it was not supported by the weight of the evidence. We could hardly be expected, where there is as much testimony in support of appellee's position as there is here, though it is contradicted by a number of witnesses on the opposite side, to say that the jury should have disbelieved all of appellee's witnesses and have accepted and acted upon the testimony of appellant's. Indeed, it appears to us, the evidence warrants the conclusion that the board mentioned was not properly secured and protected in the respect described by the witnesses. Unless this condition was the cause of Rogers' fall, then the accident is wholly unexplained. Something caused him to fall and the fall itself while not conclusive of the negligence charged, yet when taken in connection with the testimony of one witness who saw the fall, and others who observed the conditions immediately after, we think it not an unreasonable conclusion that Rogers' fall was produced by the tipping condition of the board mentioned.

Appellant insists Rogers helped to build the scaffold, knew its condition and having himself made or assisted in making the conditions that resulted in causing his death, recovery cannot be had therefor. There was evidence to the effect that deceased did some work in the building of this scaffold, but whether that work consisted of laying or helping to lay the boards or merely bringing them for others to lay, is not clear. We find no evidence to charge him with laying or assisting to lay the boards of the scaffold at the place where he fell from. It was a large scaffold, thirty or forty feet long, and it, as well as all other scaffolding, appears to have been constructed under the direction and supervision of appellant's foreman. If Rogers did work in the construction of the scaffold at one place, and other employees did portions of the work at another place under direction of appellant's foreman, and so neg-

ligently did their work as to leave it in an unsafe condition, we do not think it can be said, as a matter of law, that this would bar a recovery. Whether Rogers or his fellow-servants caused the dangerous condition of the scaffold, were questions of fact to be determined from the evidence by the jury. Whether employees of the same master are fellow-servants, has been so often defined by the courts of this state that a discussion here of the law on that subject, we think, uncalled for.

It is also insisted by appellant that the deceased was guilty of contributory negligence if he used the scaffold in the condition appellee's proof tends to show it was. We do not think this a necessary conclusion from the evidence. The failure of the timber on the I-beam to extend to the western edge of the outer plank could not be very easily seen by a person on the scaffold. The extension of the north end of the board beyond the outer edge of the board it lapped on top of, if it did so extend, might have been seen, but we do not think we would be justified in saying that that alone should prevent a recovery. Whether only one or both these defects existed, whether only one or both were the cause of the board tipping, and whether Rogers was guilty of negligence, were questions of fact for the jury to determine. The injury occurred very soon after work began in the morning and appellee's foreman, in a profane and angry manner, ordered Rogers to take the loaded wheelbarrow over the scaffold. Under these circumstances we cannot say he was guilty of contributory negligence in obeying his master's orders. It was the duty of the master to use reasonable care to furnish his employees a reasonably safe place in which to do their work; if he failed to do so and peremptorily ordered Rogers to use a place that was not safe, the master cannot escape liability on the ground that the deceased was guilty of contributory negligence in obeying his orders, unless the danger was so apparent that a man of ordinary prudence would not have incurred the risk. Graver Tank Works v. O'Donnell, 191 Ill. 236; Ill. Steel Co. v. Schymanowski, 162 Ill.

447. Neither do we think the injury resulted from an assumed risk. The risks which the servant assumes are those ordinarily incident to the business as it is conducted. It does not include hazards resulting from the failure of the master to do his duty in providing a reasonably safe place for the servants to work. Assumed risks are those which cannot be obviated by the adoption of reasonable measures or precaution by the master. City of LaSalle v. Kostka, 190 Ill. 130; Ill. Steel Co. v. McFadden, 196 Ill. 344; Western Stone Co. v. Muscial, 196 Ill. 382; Pantzer v. Tilly-Foster Iron Mining Co., 99 N. Y. 376.

On the trial appellee offered in evidence an ordinance of the city of Elgin relating to the proper and safe construction of scaffolds used in the erection of buildings. The abstract shows the following occurred:

" Mr. Fisher: I now offer in evidence on behalf of plaintiff, section 24, chapter 41, Revised Ordinances of the city of Elgin, being on page 304, Gen. No. 1247, of Revised Ordinances of the city of Elgin.

Mr. Alschuler: I object to it on the ground that the ordinance is not proven.

The Court: Are you satisfied, Judge Botsford, with the sufficiency of the proof? Is the book under seal?

Mr. Botsford: The book is under seal. It is a book purporting to be published by the authority of the city council of the city of Elgin."

The objection was then overruled and the ordinance admitted. If the book in which the ordinance appeared was what counsel said it was, it was admissible in evidence. Counsel for appellant say the court had no right to accept the word of counsel as to what the book was, but that the book must speak for itself. Counsel made no other objection than the one above quoted. By their silence after the colloquy between the court and counsel for appellee, the court might well understand they did not question the statement of counsel. To have been availing, the objection should have been specific so that opposite counsel would then have had an opportunity to obviate it. Under the

circumstances we think the court was justified in admitting the ordinance.

We have examined the instructions given and refused, and are of opinion no reversible error was committed by the rulings of the court in that regard. The last clause of the ninth instruction given for appellee was faulty, but the instruction taken as a whole we believe was not prejudicial. It was on the preponderance of evidence, and the first clause told the jury that this was not alone determined by the number of witnesses testifying to a particular fact. The instruction concluded with the statement that the preponderance of the evidence does not depend upon the greater number of witnesses who have testified on either side. If it had said, as the first clause did, that the preponderance did not alone depend upon the greater number of witnesses, it would have been unobjectionable. While the number of witnesses is not conclusive of where the preponderance of the evidence is, it is proper to be considered in determining that question. It appears to us, however, that the law having been correctly stated in the first part of the instruction, the error was so slight the jury could not have been misled by it and that appellant was not prejudiced thereby.

Believing there is no reversible error in the record the judgment is affirmed.

*Affirmed.*