## Glucose Sugar Refining Company v. James McConnell.

### Gen. No. 4,747.

1. MASTER—*when liable for acts of foreman.* A foreman stands in the place of his master and his orders are the orders of the master, and the master is responsible for the consequences of obedience thereto, unless the danger is so obvious that a servant was reckless to obey.

Action in case for personal injuries. Appeal from the Circuit Court of Winnebago county; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed April 10, 1907.

CALHOUN, LYFORD & SHEEAN, for appellant; ROBERT J. SLATER, of counsel.

FISHER & NORTH, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Appellee was injured while working for appellant, and brought suit against appellant to recover damages for said injuries. At the first trial the jury disagreed; at the second trial appellee had a verdict, which the court set aside; at the third trial appellee had a verdict for $1,999. Motions by appellant for a new trial and in arrest were denied, and appellee had judgment on the verdict, from which this appeal is prosecuted. It is not argued that the trial court erred in rulings upon the admission of evidence or upon instructions, except in refusing to instruct the jury to find defendant not guilty. It is not argued that the damages awarded were excessive. Appellant's position is that appellee was fully aware of all the facts and must have known the dangers; that he therefore assumed the risk, and that appellant was not required to warn or protect him.

Appellant had, at its plant at Rockford, an elevator in which was a corn bin four or five feet wide and

about sixteen feet long. Its sides. went straight down sixty feet, and there was a ladder down the inside from the top. Below this sixty feet the bin went down twelve feet further in the shape of an inverted cone, forming a place shaped like a hopper, the sides sloping to a point at the bottom where the grain was discharged into a spout when the slide was removed, leaving an opening for that purpose. The grain when running dropped from the end of the spout through a grating and at once passed out of sight and was elevated to another part of the building. At the time in question there were in the bottom of the bin some 400 to 600 bushels of corn, received two or three days before in damp condition, the result of which was that it had become very much hardened. and caked in the bin. Samuel W. Taylor was appellant's foreman in charge of the building and the work. Under him were appellee, one Larson and John Arthur Taylor, called here Arthur, a son of the foreman. The foreman undertook to draw out this corn, and it was so caked that it ran in driblets or not at all. He used a rod to push up through the spout in an effort to loosen and dislodge the corn. He was assisted more or less by Larson and perhaps by appellee. He sent appellee to the top of the bin with directions to go down into the bin and assist in breaking down the corn, but soon called all the men away to unload into another bin several carloads of corn which had just come in. After that work was done appellee again went into the bin with Arthur, and with a heavy iron pipe with which they sought to break a hole through the corn. While they were doing this the foreman was pushing up into the bottom of the bin with a much larger iron rod, which he bent so as to insert it through the spout. While he was doing this he caused Larson to pound with a sledge hammer upon the outside of the hopper. By their united efforts they started the corn to flowing freely, and the foreman did not then close the slide

till appellee and Arthur could get off the top of the corn, nor did he give them any warning that he had succeeded in obtaining a free flow of the corn. Appellee and Arthur had found the corn caked very hard on top, and that all their efforts made no impression upon it. They each had hold of the iron pipe which they had taken into the bin by direction of the foreman, and were pounding with it in one spot, seeking to break a small hole through, and expecting that they could then gradually break off the sides, as had been done by them before when the corn was caked in the bin. The cavity underneath became so great that the whole mass suddenly caved in, and appellee and Arthur went down, and the corn came down upon them and buried them. The foreman found the flow of the corn stopped, and by prodding with his iron rod found some soft object within, and ran to the top and found that the corn had gone down and that the men had disappeared. He got carpenters and tore open the bottom of the hopper. Appellee was taken out unconscious and injured. Arthur was dead.

The verdict rests upon the first, third and seventh counts of the declaration. It was therein charged that appellant directed appellee to go upon the surface of said corn and to pound said corn from the top for the purpose of starting it through said outlet; that appellee did not know of the existence of said cavity or that the conditions were dangerous, and appellant should have notified appellee of the existence of said cavity and of the dangerous condition of said pile of corn, and that appellant carelessly and negligently removed the corn underneath where appellee had been so ordered to work, and that appellee was thereby unavoidably drawn into said corn and injured while exercising due care for his own safety. The foreman (called by appellee) and appellee were the only witnesses who were acquainted with the material facts. Their direct examinations warranted the conclusion that but little corn was drawn out while appellee was present, and

that he had no means of knowing and did not know that any considerable cavity had been or would be created by the efforts of the foreman. The foreman testified that appellee assisted a little in poking through the spout to see if he could start the corn before he went upstairs to go into the bin. Appellee testified he did not push up the spout at all. Their testimony made it clear that the foreman procured a heavy iron pipe, and gave it to appellee, and directed appellee to go upstairs and down into the bin, and to try to poke a hole through so as to start the corn, and that appellee was acting in strict obedience to these instructions till the corn caved in, and that it was the efforts of the foreman, and the loosening of the corn from the sides of the hopper by the blows from the sledge hammer by Larson in the presence and under the direction of the foreman, which produced the free flow of the corn, and, the slide being left open and the corn left to run, caused the cavity and the sudden caving in of the corn from above. By the cross-examination of these two witnesses, which needs to be read in the record instead of the abstract, appellant succeeded in securing reluctant assents to questions in which amounts and other details were stated and pressed upon the witness in relation to matters which the witness had stated he did not know, and thereby appellee was made to say that twenty-five or fifty or more or less bushels might have run out before he went aloft, and from these expressions it is argued that he knew how much had run out, and was bound to know that a cavity had been created, and therefore he assumed the risk of going upon the surface of the corn and pounding it. When all this testimony is read in full, we conclude the jury were not required by that proof to decide that appellee knew that a serious cavity had been or would be created or that the corn was likely to cave in. This condition had never before existed when appellee had been in the bin to force down damp

corn which had caked. Always before that the corn had opened in the center and his work had been to force the corn off from the sides of the bin. When appellee went down into the bin he took along a rope and tied it to the bottom of the ladder and laid it on the corn. This may tend to prove that he expected the corn would cave in. But the foreman testified that whenever men went down into the bottom of the bin they took such a rope so that when they got it cleaned out they could pull themselves up the slippery sides of the slope of the hopper to the bottom of the ladder. Appellant's attorney visited appellee with a stenographer in the hospital on the evening after the accident, and appellee answered questions put by the attorney, and the stenographer took down the questions and answers and afterwards wrote them out in long hand. From that transcript the attorney prepared a condensed statement. Another witness presented the latter to appellee, and testified that appellee read and approved it. These statements were read in evidence by appellant. Appellant called a stenographer who took appellee's testimony at the two preceding trials, and proved by him certain things testified to by appellee. The effect of this testimony, introduced by appellant, was to show that appellee had stated and testified that he took part in the original efforts to get the corn out by pushing a rod or stick through the spout. Perhaps this proof tended to slightly modify or affect appellee's testimony at this trial in one or two other respects. But when this proof is all considered, still it was a question of fact for the jury whether appellee had such knowledge of the real condition and of the dangers therefrom that he should be treated as assuming the risk under the rules of law applicable to this case, which are as follows. The foreman stood in the place of the master, and his orders were the orders of appellant, and appellant is responsible for the consequences of obedience thereto, unless the danger was so obvious that he was reckless

to obey. Ill. Steel Co. v. Schymanowski, 162 Ill. 447; Offutt v. World's Columbian Exposition, 175 Ill. 472. In Gundlach v. Schott, 192 Ill. 509, the court said: "Even if the servant had some knowledge of attendant danger, his right of recovery will not be defeated, if, in obeying the order, he acts with the decree of prudence which an ordinarily prudent man would exercise under the circumstances. When the master orders the servant to perform his work the latter has a right to assume that the former, with his superior knowledge of the facts, would not expose him to unnecessary perils. The servant has a right to rest upon the assurance that there is no danger, which is implied by such an order. The master and servant are not altogether upon a footing of equality. The primary duty of the latter is obedience, and he cannot be charged with negligence in obeying an order of the master unless he acts recklessly in so obeying. Whether he acted thus recklessly in obeying his master's order, or whether he acted as a reasonably prudent person should act, are questions of fact to be determined by the jury." In Ill. Steel Co. v. McFadden, 196 Ill. 334, the rule is thus summarized: "A servant ordered by one in authority to do a dangerous act is not required to balance the degree of danger and decide with absolute certainty whether he may safely do the act; and, even if he had knowledge of such danger, it would not defeat a recovery for injury, if, in obeying his master's command he acted with that degree of prudence which an ordinarily prudent man would have used under the same circumstances." To the like effect are Libby, McNeill & Libby v. Cook, 222 Ill. 206, and Hinchliff v. Robinson, 118 Ill. App. 450.

If the jury believed the direct examination of appellee and the foreman, then appellee had not such knowledge of the danger as to place the risk upon him, and his obedience to the foreman relieved him from the assumption of the risk; and the jury might well conclude that it was negligence for the foreman to

permit the corn to continue to flow freely after it started, without first warning appellee of the fact and of the danger, and giving him time and an opportunity to get away from the dangerous position in which obedience to the foreman's order had placed him. The cross-examination of appellee, and the proof of former statements and testimony by him, were proper to be considered by the jury upon the question of his credibility, but the jury and the trial judge have believed him, and we see no reason to disturb their conclusions.

The judgment is, therefore, affirmed.

*Affirmed.*